Robinson *vs.* Schly and Cooper.

---

No. 72.—Jesse Robinson, guardian of A. J. Lamar, plaintiff in *fi. fa.* and plaintiff in error, *vs.* John Schly, defendant, and William Cooper, claimant.

[1.] Where an execution has been levied on property which is claimed by a third person, and the claimant seeks to show that the judgment has been satisfied, he must prove that the payment was made to the *plaintiff in fi. fa.* or the person holding the legal control under him.

[2.] An assignment of a judgment should be in writing, in order to vest the legal title in the assignee : and if transferred by delivery merely, the assignee takes an equitable interest, and may use the name of the plaintiff for the purpose of enforcing his rights.

[3.] By the Civil Law, sales of immovable property were set aside, where the inadequacy of price amounted to one-half the value. This rule, however, even by that code, did not apply to personalty; and the Common Law has fixed no definite proportion as the test of inadequacy.

[4.] Mere inadequacy of price, or any other inequality in the bargain, does not constitute, *per se,* a ground of relief against the contract, either at Law or in Equity.

[5.] But where there are other ingredients in the case, of a suspicious nature, or peculiar relations between the parties, gross inadequacy of price must, necessarily, furnish the most violent presumption of fraud.

[6.] Before relief will be granted, the parties must be placed *in statu quo;* and on this account, the party seeking to set aside the contract, is driven, necessarily, into Equity, as the remedy at Common Law is not adequate to the exigencies of the case.

[7.] Instructions of the Court which assume or pre-suppose a fact proper for the decision of the Jury, should not be given where there is conflicting testimony.

[8.] An instrument conveying negroes, and their future increase, absolutely to the grantee, his heirs and assigns, "but I do hereby save and reserve to myself a life-estate in the property above conveyed to said J. S. his heirs and assigns:" *Held,* to be a *deed* and not a *will.*

[9.] A remainder in personalty may be created by deed, reserving a life-estate to the grantor or any one else.

[10.] A conveyance from M. D. M. to J. S. his heirs and assigns, of all the cattle, horses, furniture, bank-stock, money, &c. which she might leave or be possessed of at her death, is a will and not a deed.

[11.] An instrument may be a deed in part and a will in part.

[12.] The claimant is entitled, in all cases, whether he holds under the defendant in execution or not, to show that the *fi. fa.* which is levied on his property is inoperative, by reason of payment or any other cause.

[13.] The claimant cannot, for the purpose of protecting his property, show paramount title in a third person.

*Fi. fa.* levy and claim, in Richmond Superior Court. Tried before Judge HOLT, January Term, 1849.

A *fi. fa.* in favor of Jesse Robinson, as guardian of A. J. Lamar, against John Schly, was levied on several negroes, to which a claim was interposed by William Cooper, and the parties were at issue upon this claim.

The plaintiff's counsel gave in evidence the following instruments:

"STATE OF GEORGIA, LAURENS COUNTY:

"Know all men by these presents, that I, Mary D. Moore, of the County and State aforesaid, for and in consideration of the friendship and esteem, love and affection, and the many services rendered to me by John Schly, of Jefferson, I do, by these pre-

sents, give, grant and convey unto said John Schly, his heirs and assigns forever, the following property, to wit: a negro woman, named Jane, about forty-three years of age, and her four children, William, a boy, about fourteen years of age, Rosey, a girl, about thirteen years of age, Matilda, about twelve years of age, Willaby, a boy, about four years of age—together with the future increase and issue of the said female slaves; also, all my stock of cattle and horses, household and kitchen furniture, and my bank stock, which I may be possessed of at my death; as also, all money which I may leave at my death; also, all the real estate which I may be possessed of at my death, to him, the said John Schly, his heirs and assigns, forever; but I, the said Mary D. Moore, do hereby save and reserve to myself, a life-estate in the property above conveyed to the said John Schly, his heirs and assigns.

" In witness whereof, I have hereunto set my hand and affixed my seal, this tenth day of October, 1834.

[Signed,]      " MARY D. MOORE, [L.S.]

" Signed, sealed and delivered in the presence of

" JAMES WRIGHT,
" EDWIN W. ORVIS."

" GEORGIA, LAURENS COUNTY :

" Whereas, William Cooper and Mary D. Moore have intermarried with each other, and said parties finding, from sad experience, and the great difference in their ages, as well as entire want of congeniality in their dispositions, and that they cannot agree but upon one thing, and that is, that they shall each live separate and apart from this time forward and forever, and that neither is to be bound for the contracts of the other; nor shall either molest or interfere with each other, or any thing or things held or owned by the other, as though no contract of marriage had ever existed; and whereas, said Mary D. the wife of said William, is entitled to a life estate under and by virtue of a deed of conveyance, made and executed by the said Mary D. whilst sole and unmarried, to John Schly, then of Jefferson County, and now of Richmond County, and executed by said Mary D. on the tenth day of October, 1834—a reference being had to said deed, now on record in the Clerk's office of said County, will more fully appear: and whereas, by this agreement of said parties, the said William Cooper does convey to a trustee of the said Mary D. all the rights which he acquired to all the property owned by said

Mary D. during her life, or otherwise, by virtue of his said inter-marriage with the said Mary D. for her sole and separate use during her life, and for her maintenance; and that said trustee is, in consideration of such conveyance and separation, to indemnify and save harmless, the said William Cooper, from all the debts or contracts of said Mary D. now existing, or which she may in future contract: and whereas, the said John Schly has consented and agreed to become Trustee as aforesaid, by signing this agreement with said Mary D. the wife of said William Cooper; and said John Schly has also conveyed to said William Cooper, his right, under said deed, in fee, after the death of said Mary D. to one of said negroes, named in said deed made by said Mary D. to said John Schly, and which negro woman is named Matilda; in consideration of said conveyance, by said John Schly, of said negro woman, he, the said John Schly, his heirs and assigns, is to have all the property, both real and personal, herein conveyed to him as trustee aforesaid, with all the increase of the female slaves, to be his right, in fee simple, discharged from the trust aforesaid, at the death of the said Mary D. and which said John Schly is entitled to under said deed, made by said Mary D. to him, after the death of said Mary D. now the wife of said William Cooper; and also, in further consideration that said John Schly indemnifies said William Cooper against the debts at present existing against said William, to the amount of two hundred and fifty dollars.

"Now, know all men by these presents, that I, the said William Cooper, of said County, for the considerations herein before expressed and received, do hereby bargain, sell, convey and confirm unto the said John Schly, his heirs and assigns, forever, both as trustee as aforesaid, for and during the natural life of said Mary D. and for her separate maintenance and support, as also to the said John Schly individually, and discharged from said trust at the death of said Mary D. all the right, title and claim which I have acquired to any and all property, both real and personal, had and held by said Mary D. under said deed made to said John Schly, or which she may have otherwise acquired; and also, the following property, to wit: two lots in the town of Dublin, adjoining lots of Jeremiah H. Yopp, and whereon said Mary D. now resides; also, the following negro slaves, with the increase of the female slaves, to wit: Jane, a woman, about forty-eight years of age, William, a man, twenty-one years of age, Rose, a girl, about

nineteen years of age, Willaby, a boy, about fourteen years of age, Sam, a boy, about six years of age, Louisa, a girl, about four years of age ; also, five shares of the capital stock of the Union Bank of South Carolina; also, two horses ; also, all the stock of cattle ; also, all the household and kitchen furniture—to have and to hold the same, to said John Schly, his heirs and assigns, forever, against me, the said William Cooper, my heirs and assigns; and the said John Schly doth hereby bind himself to do and perform all the covenants herein before set forth on his part, both as trustee and individually.

"In testimony whereof, the parties have hereunto set their hands and seals, this twenty-second day of December, 1840.

his<br>WILLIAM ⋈ COOPER, [L.S.]<br>mark.<br>MARY D. COOPER, [L.S.]<br>JOHN SCHLY, [L.S.]

" Signed, sealed and delivered in presence of

Francis Thomas,<br>Lewis P. Maddox, J. P."

The negroes levied on were identified as the same mentioned in the deeds, and the death of Mrs. Cooper was proven to have taken place before the levy.

The claimant showed his marriage with Mrs. Moore, and that letters of administration on her estate had been granted to him.

There was some evidence as to the relationship of attorney and client, between John Schly and Mrs. Moore, and the circumstances under which the instruments were executed.

The claimant proved by George Schly, that the plaintiff's execution was now proceeding for the witness' benefit—he claiming it under the following assignment :

| | |
|---|---|
| " Jesse Robinson, | Judgment, in the Superior Court |
| Guardian of A. J. Lamar, | of Richmond County, |
| vs. | at June Term, |
| John Schly. | 1841. |

" For value received, in the sum of thirty-five hundred dollars, of George Schly, I hereby assign and transfer said judgment to him, for his own use, without recourse on me.

" JOHN B. LAMAR,

" Guardian of A. J. Lamar, and assignee of Jesse Robinson, former guardian-
" *Macon, January 3d,* 1844."

The Court charged the Jury—

1st. That the plaintiff's execution was inoperative, and that they could not find the property subject to it, because there was no assignment in writing from Jesse Robinson, nor any evidence of John B. Lamar's being the successor of said Jesse in his said guardianship.

2d. That the conveyance of Cooper and wife to said John Schly was void, if the consideration was grossly inadequate; that a consideration not more than one-fourth of the value of the property, would be grossly inadequate; and that they might, under the circumstances of the case, consider it grossly inadequate, if the consideration paid to, or to be received by Cooper, were less than one-half of the value of the property.

Plaintiff's counsel requested the Court to charge the Jury, " that in estimating the value of the property conveyed by the second instrument to John Schly, they were to estimate the value, *so far as the negroes were concerned,* only of *the life estate* which Mary D. Moore had reserved in the first instrument;" which charge was refused, and the Court charged " that *the two instruments were to be taken as one, executed when the last was, and the value of the negroes estimated as if there were no remainder in the negroes vested in John Schly.*"

To all of which charges and refusal to charge, the plaintiff in *fi. fa.* excepted, and error has been assigned thereon.

A. J. MILLER, for the plaintiff in error.

1st. The assignment of the judgment was proved by the evidence offered by the claimant below—and he could not object that it was not proved by the highest evidence. 5 *Peters' Rep.* 132.

2d. If there were no *legal* evidence of the assignment, the judgment still belonged to Jesse Robinson; there being no evidence of payment by the defendant below; and the *purchase* by George Schly, from an unauthorized person, cannot affect the plaintiff.

3d. The *invalidity* of a judgment, by reason of payment, cannot be urged by a claimant, who does not claim under the defendant.

4th. Inadequacy of consideration cannot be set up to avoid the conveyances, in a Court of Law. 1 *Story's Eq.* §245.

5th. Inadequacy of consideration *alone*, is not sufficient to set aside the conveyances, *even* in a Court of Equity. 5 *Vesey's R.* 845. 2 *Johns. Ch. Rep.* 1, 23. 1 *Story's Eq.* §244, 245.

6th. There was no inadequacy *shown*, in the consideration of either of the conveyances.

7th. The Court erred in expressing any opinion to the Jury upon "*the circumstances of the case;*" the testimony was contradictory, and should have been left to the Jury.

8th. "The circumstances of the case" were not such as to authorize any imputation of fraud.

9th. The conveyances were separate and distinct contracts—each valid of itself—and should not have been regarded as one.

10th. Under the first conveyance, John Schly took an estate in remainder in the negro slaves; and only the life estate of Mary D. Cooper in them was conveyed by the second. 3 *Kelly's R.* 460, 569. 4 *Ga. Rep.* 52.

KELLUM & CONE, for defendants in error.

1st. In order to entitle a party (other than the original plaintiff) to control and enforce an execution, it is necessary for him to show, either a legal or equitable title to the judgment or execution. 5 *Ga. Reps.* 364.

2d. A judgment and execution in favor of a plaintiff, as guardian or administrator, is an individual judgment. These words are "*descriptis personæ,*" not affecting the character or rights of the plaintiff. 5 *Ga. Reps.* 56.

Gross inadequacy of consideration is evidence of fraud, and will avoid a deed, especially when the deed is made at the solicitation and by the persuasion of those in whom the maker of the deed has confidence, or there are other circumstances of a suspicious character. 1 *Story's Eq.* 274. *Ib.* 268, 269. 1 *Fonblanque's Eq. b.* 1. *ch.* 2. 1 *Maddock's Ch.* 212, 213, 214. 2 *Brown's Ch. Reps.* 558, 560, '1. 2 *Vesey, Sen.* 516. 9 *Vesey*, 246. 16 *Ib.* 517. 14 *Ib.* 273. 2 *Johns. Ch. Reps.* 23. 14 *Johns. Reports,* 527. 2 *Cowen*, 139. 4 *Desaussure*, 687.

A deed from a client to his attorney is void and will be set aside, if there is any improper influence, persuasion, unfairness or inadequacy of consideration; and the burthen of proof is on the attorney, to show that the transaction is fair, equitable, and

the consideration full and adequate. 1 *Story's Eq.* 330, '1. 1 *Maddox's Ch.* 94. 1 *Cox's Reps.* 112. 2 *Peere Wms.* 131. 13 *Vesey,* 116. 18 *Ib.* 301,219. *Jacobs' Reps.* 322. 2 *Harr.* 68. 2 *Young & Co.* 194, 195. 2 *Mylne & Keene,* 153. 2 *Ib.* 289, 294. 6 *Vesey,* 266, 268. 3 *Mylne & Keene,* 113. 18 *Vesey,* 120, 127. 6 *Ib.* 278. 1 *Russel & Mylne,* 539.

A conveyance executed by a person laboring under a mistake as to his right or title to the property, (the subject-matter of the conveyance,) will be set aside. 1 *Story's Eq.* 134, 140, '1. 2 *Russel & Mylne,* 614. 2 *Vesey, Sen.* 304. 2 *Merivale,* 269. 1 *Vesey,* 400. 2 *Brown's Ch.* 150. 2 *McCord's Ch.* 455. 1 *Hill's Ch.* 251. 1 *Edwards' Rep.* 467. 6 *Harris & Johns.* 24. 1 *Kelly,* 12, 238. 16 *Vesey,* 72. 4 *Prince,* 135.

The first instrument is a testamentary paper, and was revoked by the subsequent marriage of Mary D. Moore with claimant. All the property embraced in both instruments belonged, absolutely, to claimant at the time of the execution of the second instrument. 2 *Kelly,* 32. 3 *Ib.* 571. 4 *Ga. R.* 75. *Lovelass on Wills,* 317. 1 *Swinburne,* 25. *Co. Litt.* 111. *Carthen,* 38. *Habergam vs. Vincent,* 2 *Vesey, Jun.* 205. 4 *Brown's Ch. Reps.* 353. 4 *Hawks' Reps.* 141. 6 *Ala. Rep.* 631. 2 *Ib.* 155. 4 *Howard's Miss. Reps.* 220. 2 *Ib.* 737. 7 *Smede & Marshall,* 432. 2 *Brevard's Reps.* 411. 2 *Bailey's Reps.* 588. 2 *Spear's Reps.* 230. 1 *Spear's Eq. Reports,* 256.

As to the question of revocation. *Williams' on Ex'rs.* 94. 4 *Coke's Reps.* 60. 2 *Peere Wms.* 264. 2 *Brown's Ch. Reps.* 544. 2 *Term Reps.* 695.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Many interesting questions are raised in this record.

[1.] Had the execution in favor of Jesse Robinson, as guardian of Andrew J. Lamar, against John Schly, the right to proceed against the property which is the subject-matter of this claim? The presiding Judge held that it was inoperative, and that the Jury could not find the property subject to it, as there was no assignment from Jesse Robinson, the plaintiff, to John B. Lamar, and no evidence of Lamar's being the successor of Robinson in the guardianship. This defect, if it be one, is rather one of form than of substance.

It will be borne in mind, that this *fi. fa.* was issued in the name of Jesse Robinson, as guardian of Andrew J. Lamar, and that for the sum of thirty-five hundred dollars, it was transferred by John B. Lamar to George Schly, the son of the defendant—John B. Lamar signing himself as guardian of Andrew J. Lamar, and successor of Jesse Robinson, the former guardian.    The objection is, that the proof shows no privity between Lamar and Robinson.    From the record it appears that, in order to show title out of Robinson, the claimant himself introduced George Schly, who testified that the *fi. fa.* was proceeding for his benefit; that he purchased it of John B. Lamar, guardian of Andrew J. Lamar, and successor to Jesse Robinson in that office, and the witness produced in Court the written assignment to that effect. It might with propriety, therefore, be insisted, that notwithstanding the evidence of the transfer from Robinson to Lamar was of a secondary character, still, inasmuch as it was offered by the claimant himself, he may be considered as waiving any objection to its competency as proof.

We prefer, however, to put the decision of this point upon broader ground, and one more in accordance with the truth of the case.    It is not pretended that the payment proven was made to Robinson, but to Lamar.    Unless, therefore, the *claimant* can connect Lamar with Robinson, the transaction was wholly gratuitous as between Schly and Lamar; and there is nothing in the testimony to defeat the lien of the execution, as in favor of the original plaintiff, Robinson.    Lamar is a mere interloper, and the money paid to him is no satisfaction of the debt.

[2.] If, however, the execution has been assigned to Lamar by Robinson, and there be no written proof of the transfer, while the *legal title* would remain in Robinson, the *equitable interest* vests in Lamar, or in Schly, his assignee, who would have the right to use the name of Robinson, the original plaintiff, to collect the money.    *Dix vs. Cobb*, 4 *Mass. R.* 511.    *Parker vs. Grant*, 11 *Mass. R.* 157, *note.    Wheeler vs. Wheeler*, 9 *Cowen*, 34.    *Eastman vs. Wright*, 6 *Pick.* 316.    *Welch vs. Mandeville*, 1 *Wheat.* 236.    *Dunn vs. Snell*, 15 *Mass. R.* 481.    *Allen vs. Holden*, 9 *Mass.* 133.    *Brown vs. Maine Bank*, 11 *Mass. R.* 153.    *Purson vs. Tollet*, 4 *Litt.* 435.    *Southgate vs. Montgomery & Eivers*, 1 *Paige*, 41. *Andrews vs. McCoy*, 8 *Ala.* 920.

[3.] The Court charged the Jury, that they might, *under the*

*circumstances of the case,* hold the consideration paid by John Schly to William Cooper, for the property in dispute, grossly inadequate, provided it were less than one-half its value.

Why the Judge should have fixed upon one-half the value, or any other definite proportion, as the test of inadequacy, *under any circumstances,* we are somewhat at a loss to understand. It is true, *a moiety* was the criterion of the *Civil Law,* when applied to *immovable* property; but even by that code, sales of *personal* property were usually considered without redress, where there was *no fraud,* and the parties were turned over to the power of conscience and morals and religion.

[4.] We believe it to be well settled, that mere inadequacy of price, or any other inequality in the bargain, is not, *per se,* a distinct principle of relief in Equity. Much less does the Common Law know or recognize any such principle. The value of any commodity is its marketable price, which is, and always must be, forever changing; and it was well remarked by Lord Ch. Baron *Eyre,* in *Griffin vs. Spratley,* (1 *Cox's Rep.* 383,) for the purpose of demonstrating the inconvenience and impracticability, if not the injustice, of adopting the doctrine that mere inadequacy of consideration should form a distinct ground for relief—" that if Courts were to unravel all such transactions, they would throw every thing into confusion and set afloat the contracts of mankind."

[5.] Where, however, there are other ingredients in the case, of a suspicious nature, or *peculiar relations between the parties,* gross inadequacy of price must necessarily furnish the most vehement suspicion of fraud. 1 *Story's Eq. Jur.* §246.

The deed from Mary D. Moore to John Schly, purports to be founded on " friendship and esteem, love and affection, and the *many services rendered"* by the grantee, who was an attorney; and while it is not denied that where the relation of client and attorney has completely ceased, a client may be generous to her attorney or counsel, as to any one else. No undue influence can in such case be rationally supposed longer to exist. Cicero, the father of his country, and second founder of Rome, whose eloquence and patriotism have been the admiration of every age and country, was enriched by the most munificent gifts from the patrons whom he had professionally served. Still, in all contracts between attorney and client, if made especially while the relation

subsists, Courts are bound, upon principles of public utility and public policy, to search the transaction to the bottom.

[6.] The question has been argued, and like all others in this case, with much learning and ability, by the counsel on both sides, whether inadequacy of consideration can be set up to avoid a conveyance in a Court of Law. The doctrine that the "Common Law kicks a suitor into the ditch, and Chancery has to come and pull him out," has been distinctly repudiated by this Court. Wherever suitable relief can be administered, the forum is a matter of indifference; but in this case it cannot be done on the Common Law side of the Court, although it be a claim case; for if the Jury, upon the trial, should determine to set aside the conveyances, on account of the inadequacy of the consideration, coupled with the relationship of the parties, this would not be done until the price paid was refunded, or the services rendered were ascertained and compensated. For Courts will not grant relief until the parties are placed *in statu quo*; and this cannot be done at law, until our Legislature, which has infused new life and energy into our judicial system, by the reforms already introduced, shall go one step farther, and authorize the verdict and judgment at Common Law to be framed to meet the exigencies of the case. And why should we falter? Inquiry and progress are the vital elements of republican Government. Our free institutions, what are they but innovations? The bulk of our legislation is but the correction, reform and abolition of the past. We owe every thing, as a people, to the fearless spirit of Truth; and it is fortunate for the community, while the bar of this State exercises such a deserved influence on the public mind, as well as in the public councils, that as a class it is generally found on the side of common sense and liberal principles.

[7.] Before dismissing this branch of the case, we must condemn the practice in Courts of *assuming* that any fact is established by the proof, with the view to predicate a legal opinion thereon. The books abound with authority to show, that if the instructions of the Court assume or presuppose a fact proper for the decision of the Jury, it is error, and a new trial will, therefore, be granted. *Lightburn vs. Cooper*, 1 *Dana*, 273. *Trotter vs. Sanders*, 7 *J. J. Marsh.* 321. *Dallam vs. Handley*, 2 *A. K. Marsh.* 418. *Sullivan vs. Endurs*, 3 *Dana*, 66. *Bowman vs. Bartlett*, 3 *A. K. Marsh*, 86. *United States vs. Tillotson*, 12 *Wheat.* 180.

Whether *the circumstances* to which the Court alludes, did or did not exist, were questions of fact, proper for the Jury alone to pass upon. The effect of such a charge is, to withdraw altogether from the consideration of the Jury, facts which it is their province alone to weigh. The growing intelligence of our people, and our special Jury trial, render this practice wholly unnecessary. The Jury *are sworn* to express their opinion upon the facts, by their verdict. The *opinion* of the Judge is not given, even under the sanction of his oath of office. *He is sworn* only to administer *the law.* Why should the presiding Judge be allowed to declare his opinion upon the facts without being sworn, when no one else, neither Juror nor witnesses, nor any other person, is permitted to do so ? I trust that another Legislature will not intervene without its being made a distinct ground of error, for the Court to *intimate* its opinion to the Jury, upon the facts and circumstances of the case. Until this is done, trial by Jury, if not nominal, will certainly not be what it has been fondly proclaimed by its eulogists—"A privilege of the highest and most beneficial nature." Better abolish it altogether, if it cannot be protected from the control of the co-ordinate branch of the Judiciary. Life, liberty and property derive but little security from the constitutional *form* of trial by Jury, if its constitutional *force* is undermined and destroyed.

[8.] A material matter to be adjudicated in this record is, the character of the conveyance from Mary D. Moore to John Schly. Counsel for the plaintiff in *fi. fa.* asked the Court to instruct the Jury, that in estimating the value of the property conveyed by the second instrument to John Schly, (in order to determine the inadequacy of consideration,) they were to estimate the value, so far as the negroes were concerned, only of the life estate which Mary D. Moore had reserved in the first instrument. This the Court refused to do ; but, on the contrary, charged the Jury, that the two instruments were to be taken as one, executed when the last was, and the value of the negroes estimated as if there was no remainder in the negroes vested in John Schly.

Now, the refusal of the Court to charge as requested, and the charge as given, can be justified only on the ground, that the first conveyance from Mary D. Moore to John Schly, was a testamentary paper. Is this its character as to the slaves in controversy ? To read this instrument correctly, the latter clause, reserving a

Robinson *vs.* Schly and Cooper.

life estate to Mary D. Moore, should be transposed so as to follow immediately the conveyance of the negroes. It will then read, " For and in consideration of the friendship and esteem, love and affection, and the many services rendered to me by John Schly, of Jefferson, I do, by these presents, give, grant and convey unto said John Schly, his heirs and assigns, forever, the following property, to wit: a negro woman, named Jane, about forty-three years of age, and her four children, William, a boy, about fourteen years of age, Rosey, a girl, about thirteen years of age, Matilda, about twelve years of age, Willaby about four years of age, together with the future increase and issue of said female slaves; but I, the said Mary D. Moore, do hereby save and reserve to myself, a life estate in the property above conveyed to the said John Schly, his heirs and assigns." That this clause applies to the negroes, and them only, is manifest from the fact, that in all the rest of the property, she disposes only of what remains at her death.

What, then, is the proper interpretation of this paper, thus read? That it was intended to be a deed, is apparent from its face. It does not purport to be signed, sealed and *published,* as a will, but it is *delivered* as a deed. Of the numerous tests which have been suggested to distinguish between a deed and a will, we take this to be the plainest and broadest. Does the instrument, regardless of its form, pass a present interest? If this paper does not, language would seem to be incapable of effecting this object. Mary D. Moore does not convey such of these slaves as she may have at her death, but she conveys them now, by name, together with their future increase. As to the cattle, horses, furniture, money, bank stock, and real estate, she only disposes of so much, and such portions thereof, as may remain on hand at her death ; but not so as to the slaves—she carves out of these a life estate to herself merely.

[9.] That a remainder may be created in slaves, by deed or other writing, to take effect after the determination of a life estate, has been ruled again and again. *Catterlin vs. Hardy,* 10 *Ala.* 511. *Banks vs. Monksberry,* 3 *Litt.* 275. *Keen vs. Macey,* 3 *Bibb,* 39. 3 *Call.* 50. "Another ground," say the Court of Appeals of Kentucky, in the case from 3 *Littell,* " assumed in support of the first position is, that the reservation of the slaves to the donor and his wife, for life, is incompatible with the gift, and that the

operation of the deed was thereby hindered and defeated.   If either the reservation or the gift must be void, because of their inconsistency, it is obviously much more consonant to general principles, that the former should be so than the latter.   We cannot, however, admit that they are inconsistent with each other, or that either is void."

Had Mary D. Moore attempted to do any thing with this property, after the conveyance was executed, inconsistent with the title in Schly, the remainder-man, a bill in the nature of a bill *quia timet* would have been entertained for the purpose of securing him.   3 *Call*, 25.   2 *Munf.* 162.   Or had her life estate in these slaves been sold by the Sheriff, under execution against her, John Schly would, under our Statute, have had the right to require the purchasers to have given security for its forthcoming at the death of the defendant.

[10.] The only doubt which could have been entertained, would seem to be as to the other clauses, in which Mary D. Moore only conveys what she might *leave* or be *possessed* of, at her death.   It has been held, that where the limitation to the first taker is accompanied by a power of disposition, either express or implied, the limitation over is void, both because of the inconsistency and the uncertainty as to what part of the property is to go over.   3 *Ves.* 7.   1 *Hoven. Sup.* 137.   Thus, where there was a gift to Charlotte Williams, of the residue of the testator's estate, with the right of disposition by will, and if she died without will, then whatever might remain at her death, to go to W. Ashby, the remainder over was held void for *uncertainty.* 1 *Meri.* 314.   8 *Vin. Abr.* 103.   *Pl.* 50.   1 *Ves.* 9.   So where an estate was given by will to A and his heirs, and if he should die without issue living at his death, *then so much of the estate as remained undisposed of by A to B,* the limitation over was held void, because of its uncertainty as to the property to go over.   4 *Rand.* 547.

I repeat, that inasmuch as Mary D. Moore disposes only of so much of the cattle, horses, furniture, money, bank stock, and real estate, as may remain at her death, doubts might arise whether these clauses were not void for uncertainty.   They certainly would be, if the instrument, as to them, was held to be a deed. We believe, however, that upon a fair construction of the instrument, it is testamentary as to these.

[11.] Must a conveyance be necessarily homogeneous?   Or

can it not be a deed in part,* and a will as to another part ? What is there to prevent a person, in the same instrument, to sell or give a piece of property to one, and to will another piece to the same individual ? A, in consideration of love and natural affection, or $500 paid him by B, gives or sells to B a negro, by the name of Jim, and wills and bequeaths at his death, the rest of his estate, real and personal, to the said B. Can legal ingenuity suggest a plausible reason for not construing this instrument a deed of gift or bill of sale as to Jim, and a will as to the residue of A's property ? Such, we believe, is the true nature of the first instrument executed by Mary D. Moore to John Schly. And it is not accurate, we apprehend, to say, as the Supreme Court of Alabama did, in *Shepherd et al. vs. Nabers,* (6 *Ala.* 631,) that the *operation* of such · a conveyance is postponed until after the donor's death. It is true, that the possession being withheld during life, it may be said not to be *consummated* until then. We think it clear, however, that the conveyance *operated at once* to vest *the remainder* in Schly.

If this view be correct, it is obvious that the charge as asked ought to have been given, and the instructions submitted were erroneous.

[12.] We cannot concur with counsel for the plaintiff in *fi. fa.* in the position, that the claimant could not attack the validity of the process on the ground of payment, unless he claimed under the defendant. Whoever undertakes to disturb another in the possession or enjoyment of his property, must be clothed with authority of law for so doing; and it is competent for the owner to ward off this attempt, by showing the invalidity of the process, by reason of payment or any other cause.

[13.] It is true, that the claimant will not be permitted to hinder or defeat the collection of the execution, by showing property out of the defendant. He has no right thus to interpose as a mere amateur combatant between the debtor and his creditor; but when his rights are assailed, he is at liberty to defend them by carrying the war into Africa—the enemy's country.

---

*See *Dudley vs. Mallery,* 4 *Ga. Rep.* 52.—[REP.]