13710.　YARYAN ROSIN & TURPENTINE CO. *v.* HASKINS.

1. Although the contract for the breach of which this action was brought required performance by the defendant originally by March 1, 1918, and although there was an extension for the further definite period of three months, there was some evidence which would have authorized an inference that thereafter the time for performance was by implication extended for an indefinite time, and thus for a reasonable time; in view of which it was error for the court to instruct the jury in such language as to limit the time for performance by the defendant to merely the period fixed by the original contract plus the definite extension of three months.

2. Where in the trial of a case there are such material conflicts in the evidence that the evidence of one witness may be said, if believed, to disprove the facts testified to by another witness, and thus to be impeaching in its character under the express provisions of the code as to one of the methods of impeachment, it is error for the court to instruct the jury that they should not disregard the testimony of any witness unless impeached by one of the modes provided by law, and then further *to* charge that "none of the witnesses in this case have been so impeached."

3. The court erred in instructing the jury in effect that if they found that the defendant had breached the contract, the plaintiff, as a matter of law, "could recover the damages he seeks now to recover in this case."

4. Properly construed, the provision of section 4244 of the Civil Code, that
　48

" on a suit for damages for breach of the contract, the inadequacy of consideration will always enter as an element in estimating the damages," will not open an action for the breach of a contract to a defense which is grounded in mere inadequacy of consideration alone.

5. There was evidence sufficient to authorize the verdict.

DECIDED FEBRUARY 23, 1923.

Action for breach of contract; from city court of Brunswick — Judge Butts. April 24, 1922.

Charles R. Haskins sued Yaryan Rosin and Turpentine Company for damages because of an alleged breach of a contract of which the following is a copy:

" This agreement made this 12th day of July, 1917, between Charles R. Haskins, of Atlanta, Georgia, and the Yeryan Rosin and Turpentine Company, a corporation existing under the laws of the State of Georgia, witnesseth, that for and in consideration of the promise hereinafter made by the Yaryan Rosin and Turpentine Company, said Haskins grants to said company the right to remove from certain lands of said Haskins in the ninth district of Pierce County, Georgia, all of the stumps and fallen timber, with the right of ingress and egress as necessary for that purpose, the lands embracing all of lot of land number 315, the east one half of land lot number 284, and tracts 3, 11, and 12, as shown on a plat of land lot No. 284, recorded among Pierce County records in book ' EE,' page 336. This right to continue until March 1, 1918.

" The Yaryan Rosin and Turpentine Company covenants and agrees that in consideration of the privileges above granted that they will, prior to such date of March 1, 1918, remove from the said land the sound lightwood stumps and fallen timber or wood as above mentioned, but will not cut down or dynamite any of the standing timber or wood, whether living or dead, and that in removing the said stumps they will do it in such manner that no parts of the stumps shall, when the work is finished, be less than twelve inches below the normal surface of the ground at the place from which the stump is removed.

" Said Haskins also grants to said Yaryan Rosin and Turpentine Company the right to run a tram-road on the eastern fifteen feet of the 30 feet that is left for a road way between land lots 284 and 315; being a strip fifteen feet wide of the west side of lot of land number 315; said tram-road to extend for a period of three years

from date." The plaintiff alleges: "That immediately after said contract had been entered into between petitioner and the defendant the said defendant proceeded to remove from said lands all of the fallen timber and wood, which could be taken up and carried away without trouble and at very little expense, but that, except upon a very small area, none of the stumps were blasted at all and on none of the lands were the stumps removed in accordance with the terms of the contract. That the defendant has failed and refused, and, although repeatedly requested so to do, still fails and refuses to carry out the terms of its said contract and fails and refuses to remove from said lands the stumps in accordance with said contract. Petitioner shows that he was desirous of clearing said tract of land for agricultural purposes, and for this reason he agreed to convey and did convey said stumps and fallen timber to the defendant, in order that he might get his land completely cleared of stumps. That the fallen timber and wood taken and carried away by the defendant was very valuable, and petitioner would have never conveyed it to defendant except upon the express understanding and agreement that the defendant, in payment therefor, would remove all of the stumps from petitioner's said lands. That although the said defendant agreed that in payment for the fallen timber and wood conveyed to it, it would remove all of the stumps from petitioner's said tract of land in manner and form as set forth in said contract, and although the defendant immediately entered upon petitioner's said land and took and carried therefrom all of the fallen timber and wood that could be removed without expense, the said defendant failed and refused to perform its said contract, and failed and refused to remove the stumps from said tract of land." Damages were laid in the sum of $14,970. There was a verdict in favor of the plaintiff for $3,762. The defendant excepted to the overruling of its motion for a new trial.

*Bennet, Twitty & Reese,* for plaintiff in error.

*Conyers & Wilcox,* contra.

BELL, J. (After stating the foregoing facts.)

1. The motion for a new trial complains of the following charge of the court: "You will see by the original contract that the removal under the original contract was to have been completed by March 1, 1918. Subsequently, in writing, the parties agreed

among themselves for a three months' extension of that contract, and the contract in its present form, with that extension, binds and obligates the defendant to remove the described wood and stumps from the land by whatever date you find that three months extension to be, unless you find from the evidence that the defendant was prevented from removing this wood and stumps by the plaintiff." Exceptions are taken thereto on the ground covered by the first headnote. We think these exceptions are well taken. In a letter written by the plaintiff to the defendant on July 13, 1918, among other things, the plaintiff says: " Now if it should happen that the receivers would have men go ahead, and, either by burning or otherwise, complete the work of removing the stumps that have already been worked at, so they will be, as agreed, clean 12 inches below the surface, I would then be willing for them to continue removing as originally contemplated, provided they will do it, completing the work absolutely as they go." This letter does not seem to call for an answer, but would apparently be satisfied by a resumption of the work. There was some evidence that this was done, as will be shown by reference to the testimony of Hardy Lee, the foreman of the defendant, and N. B. Howe, an employee. Of course, it would be for the jury to determine whether or not any extension in addition to the three months period had been made by an implied agreement of the parties. All that we hold, of course, is that there was some evidence authorizing such a conclusion. If there was in fact such additional indefinite extension, then the time for performance by the defendant would be extended for a reasonable time. If there was such additional extension, then, until the reasonable period of time covered thereby had elapsed, the plaintiff would not have been authorized to order the defendant to cease working, provided the defendant in the meantime was proceeding in good faith with the execution of the contract in the manner contemplated thereby and with such despatch and diligence that it could reasonably have been anticipated that the defendant would have completed performance by the expiration of such reasonable time. On the other hand, if the defendant at any time ceased or failed to carry on the work in such manner, that would constitute a breach of the contract on its part whenever it occurred, even though prior to the expiration of such reasonable time, if the time for performance had been enlarged thereby; and if such

breach by it did occur, the plaintiff could then have caused it to leave his premises and to desist from all operations of every sort under the contract, no matter when such breach occurred.

We have not overlooked the fact that the plaintiff contends that the defendant did nothing in performance of its contract after he notified it in June to quit. We cannot, of course, with propriety express any opinion as to the weight of the evidence upon this point. We are not the judges of that, neither is the court below. There was evidence from two witnesses who testified to the contrary, and what we are holding is, that the issue presented by this evidence should have been submitted to the jury, and that the charge of the court did not allow the contentions as presented through these witnesses to be passed upon by the jury. See, in this connection, *Bearden Mercantile Co.* v. *Madison Oil Co.*, 128 *Ga.* 695 (3) (58 S. E. 200). Some of the other charges excepted to upon the same ground contain a like error.

2. Error is assigned upon the following charge: "You are the sole judges of the credibility of the witnesses, and it is a matter for you to determine as to the weight and credit you will give to the testimony of a witness. You have no right to captiously disregard the testimony of a witness, unless that witness has been impeached by some of the methods known to law; and none of the witnesses in this case have been so impeached." We think this charge was also error. The error is in the instruction that no witness had been impeached. There were conflicts in the evidence of a material nature by which the testimony of one or more of the witnesses, if taken at its face value, would have disapproved the facts testified to by other witnesses, and therefore, under the code, would have been of an impeaching character. Section 5880 provides that "A witness may be impeached by disproving the facts testified to by him." The court probably had in mind that no affirmative or express effort had been made by one party to impeach any witness of the other party by proof of contradictory statements previously made by him relevant to his testimony and to the case, or by proof of general bad character, overlooking for the moment, no doubt, the section of the code above referred to. But even the express sections of the code on impeachment (5880, 5881, and 5882) are still not exhaustive. See *Chapman* v. *State*, 109 *Ga.* 157 (3), 163 (34 S. E. 369). However, in other parts

of the charge the jury were fully instructed as to their province in determining the credibility of the witnesses, and it may be that the error in the excerpt quoted was substantially eradicated by the other instructions. Inasmuch as the judgment is to be reversed for other reasons, it is unnecessary to determine whether a reversal would be demanded by this error alone. Nor do we hold that in a case in which there is absolutely no evidence that could in any wise be said to be in conflict with any other evidence, such a charge might not be given.

3. Error is assigned upon the following charge: "In that connection the court desires to charge you that the law of the land at the time this contract was made provided that the plaintiff, in case of a breach of a contract upon the part of the defendant, could recover the damages he now seeks to recover in this case; and, that being the law of the land at the time the contract was executed, the parties to the contract were bound by that law, and that was in contemplation at the time they executed the contract. The measure of damages was in contemplation as a matter of law." The jury may have misunderstood this excerpt as meaning that if the plaintiff should prove a breach of the contract as alleged, it would follow then, as a matter of course, that under the law he would be entitled to recover the amount of damages sued for, to wit, $14,970. Notwithstanding instructions were given elsewhere as to the measure of damages, and the verdict was for only about a third of the sum sued for, we cannot say the charge complained of did not influence the jury to some extent in fixing the amount. While the judge, no doubt, was intending to refer solely to the standard or measure of damage, his charge was easily susceptible of a misconstruction, and we think it was error.

4. Exceptions are severally taken to the refusal of the court to admit certain testimony of named witnesses, offered on behalf of the defendant, the nature of which is indicated in the following statements of its counsel, made to the court at the time:

(1) "We expect to prove by the witness that the defendant is engaged in the business of using dead pine-wood and stumps by extracting the resinous substances therefrom and refining these into rosin and turpentine; that the defendant has a large plant located at Brunswick, and draws its supply of raw materials from cut over pine lands in southeast Georgia; that its plant was es-

tablished in 1911, and has been operated by it and its predecessors in title since; that during all of that time defendant and its predecessors in title have been buying up wood rights on cut-over pine lands,— that is, the right to cut and remove the dead pine — wood and stumps from such lands; that these are practically waste products, as the cost of cutting and removing the same and the cost of transportation to market is just about equal to the market value of the same; that the operators of said plant have made such contracts on two bases, one upon a stumpage basis, or so much per cord for the wood removed from the land, and the other a lump sum for the privilege on a given tract of land."

(2) "We expect further to show that at the time the contract in this case was made with plaintiff, the highest price the defendant or its predecessors in title had ever paid for such wood rights was fifty cents per acre by the tract, or thirty cents per cord on a stumpage basis; that many contracts have been made for less."

(3) "We expect to show further that defendant would not have agreed to pay more than an amount equal to $490, or fifty cents per acre for the wood privilege; it did not intend to pay $15 per acre, in money, services or otherwise, for a privilege or license worth fifty cents an acre, or to be liable for any such amount in the event it failed to perform its·part of the contract; that fifty cents an acre was .all the right and privilege granted was reasonably worth; that plaintiff is asserting damages thirty times that amount."

(4) "We expect to show further that the defendant did not expect to pay $15 per acre, in money or otherwise, for a privilege or license not worth more than $450 for the two lots, or 980 acres, or to be liable for any such amount in the event it failed to perform its part of the contract." Upon the refusal to admit such evidence the defendant assigns error, "and says that the proffered evidence was competent and proper and was authorized by the pleadings, and was material to the issues involved, especially upon the plea of the defendant asserting inadequacy of consideration moving unto the defendant under the contract between the parties in mitigation of plaintiff's damages by reason of the alleged breach of contract."

To determine fairly the merit or want of merit of these exceptions, we should examine both a part of the defendant's pleadings and a part of the evidence which had already been admitted and now appears in the record. The defendant pleaded that no such

measure of damages as is claimed was in contemplation of the parties at the time the contract was made, and that " the facts of the whole transaction are such as to make it unconscionable and preposterous for plaintiff to undertake to recover any amount such as he sued for;" that the defendant is engaged in the business of using dead wood and stumps, commonly known as lightwood, by extracting the resinous substances therefrom and refining the same into various mentioned products, and draws its supply of raw material from the cut-over lands of southeast Georgia; that such materials are practically waste products, and that the cost of their removal from the lands and the cost of transportation " is just about equal to the market value of the same;" that the highest price which the defendant ever paid to any one for such raw materials was 50 cents by the acre or 30 cents per cord on a stumpage basis; that the lands of plaintiff were simply cut over wild pine lands, and defendant would not have agreed to pay more than $490 or 50 cents per acre for the wood privileges. It did not intend to pay $15 per acre in money or services or otherwise [about the basis of the damages claimed by the plaintiff for defendant's failure to perform its contract] for a privilege or license worth 50 cents per acre, or to be liable for any such amount for a failure to perform its contract; that the value of the wood and stumps, about 1500 cords, which it could remove under the contract was not more than 30 cents per cord or $450. " Plaintiff is asserting damages nearly fifty times that amount," and denies that plaintiff is entitled to any such damages, and, though insisting that it has not breached its contract, yet if this issue is found against it, " then it pleads the utter inadequacy of consideration moving unto it under the aforesaid contract as an element to be considered in estimating the damages." There was no demurrer to this plea.

G. C. Smith, as a witness for the defendant, gave testimony as follows: " I am manager for the Hercules Powder Company, which is now operating Yaryan Rosin and Turpentine Company plants. I have been connected with the Yaryan plants in the capacity of manager and general manager and trustee in bankruptcy since the first part of 1912. The Brunswick plant had been operated about four months before I went with it. During the entire time I have been with the enterprise the purchase of wood

and wood rights on lands has been under my jurisdiction. During that period I have gone over all wood lands within a radius of four miles from all railroads for a distance of 150 miles out of Brunswick, for the purpose of ascertaining the quantity of material accessible to our plant. Before the company entered into the contract with Haskins I went over his land and made an estimate of the wood on the two lots. I estimated that the two lots would cut 2500 tons of wood, not counting the stumps." " My estimate would be as good as any man's in Georgia."

The contract mentions dynamite inferentially as a method by which the defendant might execute the work of removing the stumps. By the evidence it appears that this was the method which the defendant did employ for the part of the work actually accomplished. The business manager of the defendant is also business manager for Hercules Powder Company. But while his evidence shows a capacity for estimating the value of stumps and fallen wood upon a given area, existing before the execution of the contract, and also an acquaintance with the use of dynamite, it does not appear how long he has been connected with the Hercules Powder Company or how long acquainted with the use of dynamite. But it should not be overlooked that the defendant must have intended, at the execution of the contract, that it would possibly be necessary to employ dynamite in performing the work it undertook. It at least had the suggestion before it in the contract it signed. So it was sufficiently put on guard both as to what it was getting and as to what it should do. No inequality between the parties appears, no unfairness, imposition, or overreaching; no fraud, accident, mistake, disability, incapacity, ignorance or folly is alleged. Inadequacy of consideration, maintaining " a splendid isolation," is the sole ground which the defendant sets up for reducing the damages otherwise to be fixed by ordinary rules. The charge that the transaction was unconscionable, and so forth, is but a conclusion.

Section 4244 of the code is cited, and especially the part which we italicise, as the authority for these assignments: " Mere inadequacy of consideration alone will not void a contract. If the inadequacy be great, it is a strong circumstance to evidence fraud; *and on a suit for damages for breach of the contract, the inadequacy of consideration will always enter as an element in estimating the*

*damages."* The part of the section so marked seems never to have been directly construed. It was introduced in the Code of 1861, apparently as a codification from the common law or from some of the older cases, which are referred to in a work on contracts, hereinafter to be quoted. But " whatever may be the precise meaning of the section just mentioned, it certainly has no application at all to a case like the present." *Pitcher* v. *Lowe, 95 Ga.* 423 (4), 429 (22 S. E. 678). A similar principle seems to have been applied in instances of contracts grounded in folly, in a number of very old cases, referred to in most of the texts on the subject of " Consideration," and in the later decisions. We quote the following from Metcalf on Contracts, 215 : " There are anomalous cases of unconscionable bargains, in which promisors have been excused from performance according to the terms of the bargains, and in which the promisee recovered only what was fairly due to him. James *v.* Morgan, 1 Lev. 111, was ' assumpsit to pay for a horse a barleycorn a, nail, doubling it every nail; and avers that there were thirty-two nails in the shoes of the horse, which, being doubled every nail, came to five hundred quarters of barley. The cause being tried before Hyde, J., he directed the jury to give the value of the horse in damages, being 8 pounds, which they did; and judgment was given for the plaintiff.' And Lee, C. J., in 1 Wils. 295, approved this decision. A similar decision was made in Cutler *v.* How, 8 Mass. 257, and in Baxter *v.* Wales, 12 Mass. 365, where the jury were instructed that they might consider the contract unconscionable and might assess, as damages, such sum as would relieve the defendant from what was oppressive in the contract. Such cases are at variance with the rule that a party must recover upon his contract, if he sue upon it, or not recover at all. When an express contract is void, and it is not equitable that the defendant should retain property without paying for it, the usual course is to disregard that contract and sue upon an implied one. In Thornborow *v.* Whitacre, 2 Ld. Raym. 1164, and 6 Mod. 305, the defendant, in consideration of half a crown, promised to pay two grains of rye on Monday the 29th of March, four grains the next Monday, doubling every Monday for a year. A declaration on this promise was demurred to on the ground that performance was impossible, ' as all the rye in the world was not so much.' But ' the counsel for the defendant, perceiving the opinion of the

court to be against his client, offered the plaintiff his half crown and his cost, which was accepted of, and so no judgment was given in the .case. ' "

. Cases mentioned in the foregoing are cited in Hume *v.* United States, 132 U. S. 406 (10 Sup. Ct. 134, 43 L. ed. 392), a case relied on by plaintiff in error. The plaintiff there sued for shucks which he had furnished to the government at 60 cents per pound, under a contract fixing such prices. The government pleaded a mistake in the contract; that "hundred weight" should have been and was intended instead of "pounds." After a number of statements and quotations, rather broad in effect, the court undertakes to deduce a rule: "The true principle deducible from the authorities, and most consistent with the reason of the thing, seems to be ·this: In the instance of a special contract which has been wholly executed and the time of payment passed, if the plaintiff proceeds in general assumpsit, the express contract is only evidence of the value of the consideration, which is open to attack by the defendant in reduction of damages. But where the action is in special assumpsit, the express promise of the defendant fixes the measure of damages to which the plaintiff is entitled. And while the general rule is that the performance of every contract may be resisted on the ground of fraud, at law as well as in equity, yet upon a contract of sale the defendant, having accepted performance, cannot interpose this defense to defeat the contract, unless he returns the article or proves it to have been entirely worthless, though he may ordinarily recoup the damages which he can show he sustained through the fraud. And there may be contracts so extortionate and unconscionable on their face as to raise the presumption of fraud in their inception, or at least to require but slight additional evidence to justify such presumption. In such cases the natural and irresistible inference of fraud is as efficacious to maintain the defense at law as to sustain an application for affirmative relief in equity. When this is so, if performance has been accepted in ignorance and under circumstances excusing the non-return of articles furnished, and these have some value, the amount sued for may be reduced to that value."

There a mistake was pleaded, but not so in the case at bar. The rule which is thus laid down does not apply to the *inadequacy* when standing alone.

To the same effect are the cases in Georgia. No matter what is the purpose for which the inadequacy is pleaded, it is insufficient for any measure of relief when it is called to rescue single-handed. Such we gather from the code itself. (See, besides that now being specially considered, the following sections: 4129, 4630, and 4637.) Apparently the only possible exception is provided in section 4637, relating to specific performance, an affirmative proceeding in equity which can not stand except in "good conscience." In other cases grown men must be allowed to determine for themselves what is advantageous, and make contracts for themselves, so long as their conduct does not transgress any principle of law. "So long as a man gets what he has bargained for, and it is of some value in the eye of the law, the courts will not ask what its value may be to him, or whether its value is in any way proportionate to his act or promise given in return, for this would be 'the law making the bargain instead of leaving the parties to make it.'" Clark on Contracts (2d ed.), 112.

Inadequacy of consideration may with other circumstances, even sometimes slight, be a ground of relief, but only when it is so coupled. *Palmour* v. *Roper,* 119 *Ga.* 10 (6), As was said in *Green* v. *Lowry,* 38 *Ga.* 548, 553, quoting Story on Contracts: "In cases of gross inadequacy the court will also take advantage of every circumstance which indicates imposition or improper advantage, to found a presumption of fraud, and thereby to rescind the contract. The mere inadequacy of the consideration is not, however, in such cases, the ground upon which a contract is invalidated, but the fraud which is thereby indicated, and however inadequate the consideration may be, yet if the circumstances of the case indicate no unfair advantage on the one side, or no great incompetency on the other, the contract will be valid. See also *Austell* v. *Rice,* 5 *Ga.* 472 (2), 478; *Robinson* v. *Schly,* 6 *Ga.* 515 (4), 524; *Wormack* v. *Rogers,* 9 *Ga.* 60; *Hoyle* v. *Southern Saw Works,* 105 *Ga.* 123 (4), 124 (31 S. E. 137); *Smith* v. *Georgia Loan & Trust Co.,* 114 *Ga.* 189 (29 S. E. 846); *Sumner* v. *Sumner,* 121 *Ga.* 1 (4) (48 S. E. 727); *Whitefield* v. *McLeod,* 2 Bay (S. C.), 380 (1 Am. D. 650). "Mere inadequacy of consideration of price, or any other inequality in the bargain, does not constitute, per se, a ground of relief against a contract, either at law, or in equity." *Robinson* v. *Schly,* supra. "The law does not

weigh the quantum of consideration, deeming it unwise to interfere with the facility of contracting and the free exercise of the judgment and will of the parties, but allows them to be the sole judges of the benefits to be derived from their bargains, provided there be no incompetency to contract and the agreement violates no rule of law." 6 Am. & Eng. Enc. Law (2d ed.), 694. All of the foregoing for the purpose of perspective. Now to return to the code section (§ 4244) immediately to be construed.

To permit the measure of damages to be determined in the light of the consideration alone would be allowing by indirection what the practical  unanimity of decisions declares cannot be done directly, namely the effectual destruction or setting aside of the contract on account of the mere inadequacy. The result would mean the impairing of contracts, interference with the freedom of men to exercise their own judgment, attend to their own affairs, and bargain as they please; to spread anarchy in commerce and chaos in the important business relations of life. It would run counter to many of the other code sections and collide with hundreds of decisions laying out the reasonable, definite, and reliable standards for the ascertainment of damages from breaches of contractual duty, and leave every such controversy wide open to the varying judgments and peculiar notions of whatever jury might be called to sit upon the particular case. The section in question must be examined in the light of the others and of the many decisions in reference to rules for the measurement of damages to be awarded in cases of breaches of the various classes of contracts. The part of the section which is invoked, that " on a suit for damages for breach of the contract, the inadequacy of consideration will always enter as an element in estimating the damages," can mean only that the inadequacy *with other circumstances* sufficient for the law's notice may combine to reduce the damages, by scaling or mollifying the usual rule; but the smallness of consideration by itself, if there be any at all, can not have such effect.

From the foregoing authorities and others besides, we believe that the word " element " as employed in the section must have been used in place of or as the equivalent of " circumstance," and that the clause as stated has the meaning of this: " And on a suit for damages for breach of the contract, the inadequacy of consideration will always enter as a *circumstance* in estimating the dam-

ages;" and that, when construed in connection with other sections and well-known principles, it provides only that where other circumstances are present as a cause for relief, the inadequacy may be considered along and in connection therewith. "Element" is defined by Webster as: "A component or essential part; especially, a simple part of anything complex; a constituent; ingredient." Thus, inadequacy is only one of other constituents or ingredients of a general cause for reducing the damages. If this construction seems strained, we think it is not worse so than one which would set at naught other principles which are thoroughly established, and in harmony with which this section must be regarded.

We do not forget that the effect of fraud, accident, mistake, or the like is usually to annul and cancel the contract, from its inception, rather than to permit only a partial redress, considering it valid. But cases are supposable where such may be set up not for avoiding the contract in its entirety, but merely for relief from its unfair or unconscionable burdens. Such would seem contemplated at least by this section. Such a case, for instance, would arise where a contract is performed by the plaintiff in whole or in part, and where the defendant in an action for its breach, "having accepted performance, cannot interpose this defense [fraud] to defeat the contract, unless he returns the article or proves it to have been entirely worthless, though he may ordinarily recoup the damages which he can show he has sustained through the fraud." Hume v. United States, supra. "And generally, if the subject-matter has been so dealt with, even before discovery of the fraud, that the parties cannot be reinstated in their former position, the court will not allow a rescission, but will leave the matter to be adjusted by an action for damages by the party injured, or defense or counterclaim in an action by the other party." Clark on Contracts (2d ed.), 237. In the like instances, "the inadequacy of consideration will always enter as an element [i. e., one of the circumstances] in estimating the damages" which the plaintiff may recover. The proposition announced in the case of Hume, supra, that "if a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter, but only such as he is equitably entitled to," is taken from Scott v. United States, 79 U. S. 443 (20 L. ed. 438), and was apparently laid down in

the Scott case as a deduction from the same "anomalous cases" which are mentioned in our quotation from Metcalfe on Contracts, supra.

It is provided in § 4395 of the code that "damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated when the contract was made, as the probable result of its breach;" but we do not think that the inadequacy of consideration unaccompanied by other circumstances is regarded in the law as illustrative of what damages "the parties contemplated," nor that for the same single reason a contractual transaction may be said to be unconscionable. In further support of the views expressed, it is noticeable that the provision which the defendant invokes is interwoven with the idea of fraud in the self-same section.

It is better that one individual may now and then suffer the tedious or costly burdens of an ill-advised agreement than to upset the sanctity and security of contractual relations as a whole. Our laws are founded on the great general weal, and must be construed in the consciousness of this supreme purpose, notwithstanding the regrettable hardship which may result in occasional individual cases.

Under the facts of this case we find no error in the exclusion of the evidence which was tendered.

5. The court charged the jury upon positive and negative testimony, and failed to instruct the jury directly in the same connection that in applying the rule in relation to this character of evidence they should consider and pass upon the credibility of the witnesses. Exception is taken to the charge as given, upon the ground that there was no evidence of a negative character to support it, and also because of the omission alluded to. The only negative evidence which we find in the record is favorable to the plaintiff, and the charge, having a tendency to minimize that kind of evidence, could, of course, result in no harm to the defendant. There was no prejudice to the defendant by the instruction given, and it must follow that it does not become harmful merely because of the omission to charge the proper rule in full.

There was no other error in any of the charges or rulings, for any of the reasons assigned. The refusal of a new trial, was error solely for the reasons stated in other divisions of this opinion.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*