## THORNTON, administrator, *et al. v.* MARTIN.

1. Where one purchases shares of stock in a railroad company, and the vendor and the agents of the company refuse to recognize the validity of the sale or to allow a transfer on the books of the company, the purchaser may bring an equitable proceeding against the vendor and the company to restrain the former from disposing of the stock or interfering with its transfer, and to compel the company to make the transfer and receive the purchaser as a shareholder. There is in such a case no misjoinder of parties or of causes of action.

2. Where, as collateral security for a promissory note, the maker pledges railroad stock and gives the pledgee full powers of sale, the sale need not be made in the county in which the railroad is situated. This is especially true when the note is dated and made payable in another county in which also the maker resides.

3. Where the pledgee is authorized, on or after the non-payment of the note at maturity, to sell the stock at public or private sale, without advertisement or "giving any notice" to the maker and pledgor, the sale is not invalid when made without demand and without notice of the time or place of sale, although not made until long after the maturity of the note. Where there is no valid extension of the note, the waiver of notice is not affected by mere delay in exercising the power of sale.

4. In such a case evidence that, two or three days before the sale, the pledgee notified the maker that he wanted to collect the note within a short time and the maker replied that he was ready to pay whenever the pledgee wished, is insufficient to show an agreement to postpone the sale until further notice, and is irrelevant.

5. In a suit against the pledgor and the railroad company by the purchaser at the pledgee's sale, to enforce a recognition of his rights as purchaser, it is error to admit in evidence without proof of their execution the written transfers of the stock made by the pledgee, although the defense to the suit calls in question the validity of such transfers without admitting or denying their existence.

Argued June 26, — Decided August 7, 1902.

Equitable petition. Before Judge Butt. Talbot superior court. September 16, 1901.

An equitable proceeding was instituted by Martin against Thornton, of Muscogee county, and the Talbotton Railroad Company, whose principal office was in Talbot county. The petition alleged, that on January 2, 1895, Brannon, administrator of the estate of Hochstrasser, had loaned $2,000 to Thornton, taking therefor the latter's promissory note, dated and payable at Columbus in Muscogee county, and due one year after date; that this note, a copy of which was attached, contained a pledge of certain shares of the stock of the defendant railroad company, each of the par value of $100, then owned by Thornton; and that Thornton at the same time delivered to Brannon the certificates representing these shares. The promissory note, after pledging the stock to Brannon, gave him "full power and authority to sell said collateral security or any part or portion thereof, at public sale or at private sale," on or after the non-payment of the note, without advertisement or "giving any notice" to Thornton, and to apply the proceeds to the note, accounting for the surplus to Thornton. It was further alleged, that the note was not paid, and on August 2, 1898, Brannon offered the stock for sale at public outcry in the city of Columbus, Muscogee county, at the usual place and proper hour for holding sheriff's sales, when the same was knocked off and sold to Martin for $1,-000; that in pursuance of this sale Brannon delivered the certificates to Martin, made him a written transfer of them, and filled in upon the back of each certificate due authority and instructions to the secretary of the defendant company to make the transfer upon the books of the company; that Martin presented to the secretary these certificates, together with the promissory note and pledge of Thornton and Brannon's transfer of the stock and order to the secretary to make the transfer, offering to surrender the old certificates and have new ones issued in his own name, in accordance with the custom of the company, but the company and its secretary refused to allow the transfer to be made upon the books, although the company had no lien upon this stock; that the only reason assigned for this refusal was that Thornton still claimed to own the stock, and had given direction that the shares should not be transferred; that Thornton was president of the company. The petition prayed that Thornton be restrained from disposing of the stock or voting it, and from interfering with its transfer upon the books of the company; and that the company be required to make the transfer upon its books. There was also a prayer for general relief.

The railroad company demurred generally, and on the ground that there was a misjoinder of the company as a party. Thornton demurred generally, and on the ground that there was a misjoinder as to him. The court overruled these demurrers, and also oral demurrers of the defendants on the grounds, that the stock should have been sold in Talbot county and could not be sold in Muscogee county; that, as the time of payment of the note had been indefinitely extended, the petition should show that there had been a demand; and that there was a misjoinder of causes of action. To these rulings the defendants excepted. In their answers the defendants set up that no demand for payment was ever made upon Thornton, and he was given no notice of the sale of the stock; that he did not owe the sum claimed by Brannon; and that the latter and Martin colluded together to secretly sell the stock and defraud Thornton. Thornton also filed a cross-bill against Brannon as administrator, and Martin, alleging that he had regularly paid the interest upon his note, and that Brannon had asked no more than this; that he had also, in 1897, made a payment of $200, which had never been credited upon the note; that in the latter part of July, 1898, Brannon told him that one of the minors interested in the estate he represented would reach the age of twenty-one during the next month, and he wished Thornton to settle his indebtedness; that Thornton agreed to do this, and was ready and willing so to do, but Brannon, without any notice and without Thornton's knowledge, sold the stock for $1,000; and that the value of the stock was fully $5,000. The cross-bill prayed that the sale be set aside and annulled, and that Martin and Brannon be required to surrender the stock upon the payment of such amount as might be found to be due upon the note. In an answer to this cross-bill, Martin denied any collusion or secret understanding with Brannon, and alleged that the purchase of the stock was made by him in good faith, and that the price paid was full and fair. Brannon denied agreeing to any delay in the payment of the note; denied the alleged uncredited payment; alleged that he made repeated demands upon Thornton, and gave him full notice that if the note was not paid by the first Tuesday in August, 1898, he would sell the stock; and alleged that the sale was in every way fair and open and without any fraud or collusion, and that the price paid was adequate and was about $200 less than was then due upon the note.

Brannon and Thornton having died, their personal representatives were made parties. Upon the trial the judge directed a verdict against the defendants, and they excepted, assigning error upon the direction of the verdict and upon the rulings discussed below.

*Jesse J. Bull,* for plaintiffs in error.
*Persons & McGehee,* contra.

SIMMONS, C. J. (after stating the facts as above.) 1. That the petition set forth a cause of action, at least as against a general demurrer, we think evident from the synopsis of it given above. Under the allegations made, Martin had acquired a good title to the stock in controversy, and had a right to have it transferred on the books of the company. The contention that there was a misjoinder of parties defendant was also without merit. Thornton claimed to own the stock, and it was necessary to make him a party in order to settle the question of title; and the company was an equally necessary party, in order that the plaintiff might get full relief and have the transfer made on the books of the company. 1 Morawetz, Priv. Corp. (2d ed.) § 221. Nor could the plaintiff be forced, in order to remedy his wrongs, to bring two different and independent actions. While the relief prayed was against two different defendants, the causes of action against them were not separate and distinct, but related to the same subject-matter and were based upon the same transaction. There was, therefore, no misjoinder either of parties or of causes of action.

2. We can see no force in the contention that the sale under the power given in the note should have been made in another county merely because the latter was the county in which was located the corporation whose stock was sold. Section 5431 of the Civil Code, providing for the levy of executions upon railroad stock in the counties through which the railroad passes, is in no sense applicable to the present case. The note did not specify where the sale should be made, but, inasmuch as it was dated and made payable in Muscogee county and the maker resided in that county, we think the parties contemplated that the sale should be made in that county. It was not a sale under judicial process or execution, but a sale under a written power of sale; and the intention of the parties, as shown by the writing, must govern as to this matter. The sale took place during the usual hours and at the place at which the sheriff of

Muscogee county usually made his sales. It was made at public outcry and on a regular sale day.

3. Counsel for the plaintiffs in error argued, in support of the defendants' other demurrer, that, "the time of payment of the note having been extended to an indefinite period and no fixed time of payment, a demand for payment should have been made before a sale." The petition does not show that there had ever been any extension of the note, and nothing more appears than that the sale was delayed until more than two years after the maturity of the note. Indulgence of the payee was not an extension of the note, and the same was due at a fixed and definite time. Even were this not true, the maker had waived both demand of payment (18 Am. & Eng. Enc. L. (1st ed.) 669 [3]) and notice of the time and place of sale.

4. Defendants offered in evidence testimony to the effect that in the latter part of July, 1898, Brannon told Thornton he would soon have to settle with one of the beneficiaries of the estate he represented, and wanted Thornton to pay him; and that Thornton had expressed a willingness to do so. This evidence was objected to as irrelevant, and the objection was sustained. The defendants excepted. This evidence was properly excluded. Brannon had full power and authority to sell the railroad stock at any time after the maturity of the note, without notice to the maker of the note. This evidence did not show any definite or binding extension of the note, or any agreement either to postpone the sale until further notice, or to give the maker notice before making the sale. It was insufficient to show any of these things, and was properly ruled out as irrelevant.

5. Error is assigned on the admission in evidence, after the introduction of the note of Thornton, of an entry indorsed thereon, signed by Brannon as administrator, reciting that he had, by virtue of the power vested in him by the note, regularly sold the stock at public sale to Martin, the highest bidder, and entering a credit of $1,000 on the note. The objection to this evidence was that there was no proof of its execution. The same objection was made to the introduction in evidence of the written transfer of the specific shares of stock by Brannon, administrator, to Martin. This transfer recited that Brannon was acting under the power given him by Thornton, and transferred the stock to Martin. It also author-

ized the secretary of the railroad company to transfer the stock on the books of the company. Copies of these papers were attached as exhibits to the petition, and the transfer under the sale was not expressly denied by the defendants, but the validity of the sale was attacked and Thornton sought to have it annulled. At the same time, the defendants did not admit the sale or the transfer thereunder. They alleged that they did not know; but that if there had been such a pretended sale, it was invalid and should be set aside. Counsel for the defendant in error sought to justify the ruling of the court on the grounds that there was no issue of fact as to the execution of these papers, they being virtually admitted in the pleadings of the defendants; that one of these papers was admissible as being the foundation of the plaintiff's suit, and that the other was admissible without proof of its execution, under the Civil Code, § 5244, as being only incidentally or collaterally material to the case. We think that these contentions are not sound. Whether or not there had been a sale, and whether or not these papers had been executed by Brannon and delivered to Martin, were not facts which necessarily came within the knowledge of Thornton or of the railroad company. They might very well have been entirely without reliable information as to these matters. The defendants' pleadings did not expressly deny the sale or the execution of the papers attached to the petition as exhibits; but it is also true that they did not expressly admit either. The papers could not, therefore, be admissible as having been admitted to be true. Both of the papers were material to the case, one of them to show title in the petitioner and authority to the company to make the transfer on its books, and the other to show the fact of sale and that there had been a sale to the petitioner and a credit on the note. We are fully aware of the decisions in *Strange* v. *Barrow*, 65 *Ga.* 23, *Couch* v. *Couch*, Ibid. 748, and *Hays* v. *Hamilton*, 68 *Ga.* 833. But they are not here applicable. In each of those cases the suit was upon a written contract embodied in or attached to the petition, that contract was alleged to have been executed by the defendant and was declared on as the foundation of the suit, and there was no denial of its execution. In such a case the contract is admissible without proof of its execution. In the present case the transfers of the stock to Martin by Brannon were material and necessary to the plaintiff's case, and were attached as exhibits to the petition, but

the suit was not against the person who executed them. They are not the foundation of the suit in the sense that they are declared on and a recovery sought because of their breach. For these reasons we think they come within the general rule that papers are inadmissible in evidence until their execution is proved. Without proof of their execution they were inadmissible. As well admit in evidence, in the trial of a suit for land, all of the deeds in the chain of title set up in the declaration, merely because they are essential to the plaintiff's case and their execution has not been either admitted or denied by the defendant. Without this evidence the case against the defendants was not made out, and, as the evidence should have been excluded, the judgment below must be reversed.

We have considered the motion to dismiss the writ of error in this case and have reached the conclusion that it was without merit. It was predicated upon the failure to serve the bill of exceptions upon Martin in his representative capacity as executor of Brannon's estate. In that capacity he was a mere formal party and had no interest whatever in the result of the litigation.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*