## PALMOUR *v.* ROPER *et al.*

1. A deed, given to secure the payment of notes, which describes the property conveyed by setting out the numbers of the land-lots composing the tract, and not by metes and bounds, does not necessarily imply that the land-lots are pledged separately ; and where the special judgment against the land obtained in a suit on the notes, and the execution issued thereon, merely follow the description of the land contained in the deed, this does not constitute, as matter of law, a mandate to the levying officer to sell the lots separately.

2. The main object to be considered in the conduct of judicial sales is to make the property bring the best possible price ; and in the effort to attain this object the sheriff, in the absence of instructions from the court, is invested with a discretion.   Where the property is susceptible of division and a sale in parcels will produce a better price than a sale in bulk, the property should be so sold.   If such is not the case, the property may be sold in bulk.

3. In the trial of an action to set aside a sheriff's sale of land, it being contended by the plaintiff (the defendant in execution) that the sale was void because conducted in an unauthorized manner, where the defendants sought to show that the sale was conducted in pursuance of a request made of the sheriff by an alleged agent of the plaintiff, and the plaintiff contended that such person had no authority to represent him in the making of the request indicated, it was proper for the court to submit to the jury the question whether there was an agency, and whether the alleged agent made the request attributed to him.

4. The fact that the trial court charged the jury on an issue not made by the pleadings will not be cause for a new trial, where it appears that the charge given had a tendency to benefit, rather than to injure, the complaining party.   Especially is this true when the judge certifies that counsel for the movant argued before the jury the question upon which the charge complained of was given.

5. Inadequacy of price, though gross, will not be sufficient to set aside a sale, unless coupled with other circumstances sufficient to give rise to a presump-

tion of fraud. This is a rule of evidence ; for the law does not set aside the sale on account of the inadequacy of price, but because of the fraud which it is supposed to indicate ; and inadequacy of price alone is declared to be not sufficient to warrant a presumption of fraud.

6. Even if Civil Code, § 4856, is applicable to a case like the present, where a sheriff's sale is attacked as void by an equitable petition filed by the defendant in execution, a trial had before a jury, who find that the sale was valid, the verdict approved by the trial judge, and judgment rendered thereon, this is a sufficient confirmation of the sale to meet the requirements of the code section cited.

7. The evidence was in many particulars conflicting, but was sufficient to sustain the verdict rendered ; the trial court has set the seal of its approval on that verdict, and this court will not interfere with the judgment overruling the motion for a new trial.

Argued November 2, — Decided November 14, 1903. Rehearing denied November 28, 1903.

Equitable petition.　Before Judge Kimsey.　Dawson superior court.　March 9, 1903.

. *Howard Thompson* and *Spencer R. Atkinson*, for plaintiffs. Sale voidable because land not sold in separate parcels : Ror. Jud. Sales (2d ed.), §§ 730–1, 747, 1101 ; 2 Freem. Ex. (3d ed.) § 296 ; 21 Am. Dig. (Cent. ed.) cols. 1210–11, 1322 ; 17 Am. & Eng. Enc. L. (2d ed.) 975 ; 118 *Ga.* 254 ; 102 *Ga.* 48 ; 95 *Ga.* 404 ; 25 Ill. 322 ; 29 N. J. Eq. 466 ; 1 Bush, 538 ; 4 Bush, 81 (9) ; 6 Cald. 328 ; 1 Pa. 61 ; 73 Pa. St. 117, 120 ; 30 N. W. (Iowa), 46.　Distinction between judicial and execution sales : Freem. Void Jud. Sales, § 1 ; 2 Freem. Ex. (3d ed.) § 291, p. 1679 ; 111 *Ga.* 787.　Sale being in pursuance of a foreclosure in equity, rule as to chancery sales applies : Ror. Jud. Sales (2d ed.) § 592 ; Jones on Mortgages (2d ed.), § 1616 ; 43 N. J. Eq. 444.　Sale under decree must conform to it : 2 Freem. Ex. (3d ed.) § 292. Issuance of execution does not prevent sale from being judicial sale : 1 Freem. Ex. (3d ed.) § 1.　Power of court as to setting aside execution sales : Civil Code, § 5427 ; 72 *Ga.* 638 (3) ; 109 *Ga.* 710 ; 114 *Ga.* 193.　Inadequacy of price : 2 Freem. Ex. (3d ed.) 1807 ; 21 Am. Dig. (Cen. ed.) cols. 1326, 1338, §§ 703 et seq., 708 ; 72 *Ga.* 646 ; 109 *Ga.* 707, 710 ; 114 *Ga.* 190 ; 32 Iowa, 9.　Contract of tenancy by plaintiff with purchasers does not prevent him from attacking sale : 110 *Ga.* 654.　Equitable petition to set aside sale, proper procedure : 1 Am. & Eng. Enc. L. (1st. ed.) 672–3 ; 73 Pa. St. 116.　Confirmation of sale necessary : Civil Code, §§ 4856–7

*H. H. Dean, H. H. Perry,* and *W. B. Sloan,* for defendants. Bona fide purchasers at the sale protected: Civil Code, § 5454; 11 *Ga.* 428; 52 *Ga.* 166; 53 *Ga.* 223; 86 *Ga.* 384–5. Inadequacy of price: 53 *Ga.* 221; 83 *Ga.* 124; 84 *Ga.* 36; 86 *Ga.* 385; 92 *Ga.* 570; 114 *Ga.* 190. Mode of sale: 118 *Ga.* 254; 109 *Ga.* 647; 106 *Ga.* 351; 102 *Ga.* 48; 98 *Ga.* 801; 95 *Ga.* 404; 77 *Ga.* 83; 73 *Ga.* 127; 50 *Ga.* 418; Ror. on Jud. Sales, §§ 730–1–2, 757; 20 Enc. Pl. & Pr. 216; 17 Am. & Eng. Enc. L. (2d ed.) 976–7; Freem. Ex. (2d ed.) § 296; 5 Neb. 47; 7 Or. 454–5; 26 S. C. 566, 571; 81 Ind. 193; 6 Minn. 192; 17 Pa. St. 507; 3 Hawks, 44; 2 Bibb, 401. Sale not set aside unless injury shown by sale en masse: 28 Am. St. 149; 84 Am. St. 409; 98 N. C. 358; 71 Cal. 262; 20 N. C. 414; 25 Iowa, 456; 26 Iowa, 117; 30 Ind. 185. This was an execution sale, not a judicial sale: Ror. Jud. Sales, §§ 2, 18–20, 590; 109 *Ga.* 309; Civil Code, §§ 4856–7; 70 *Ga.* 312; 61 *Ga.* 268; 111 *Ga.* 787. Execution would be upheld though special judgment not strictly followed: 109 *Ga.* 306 (2). Waiver of right to have sale in parcels: 20 Enc. Pl. & Pr. 217; Civil Code, § 5472; 104 *Ga.* 593; 89 *Ga.* 1; 78 *Ga.* 57; 33 *Ga.* 39. As to presence of agent at sale: 102 *Ga.* 115. Bound by act of agent: 9 *Ga.* 238; 18 *Ga.* 432; 19 *Ga.* 417; 38 *Ga.* 401; 59 *Ga.* 566; 64 *Ga.* 59; 67 *Ga.* 595; 68 *Ga.* 434.

CANDLER, J. In February, 1888, Palmour borrowed $2,000 from Smith, executing his promissory note therefor, and also, as security for the payment of the note, a warranty deed to certain land in Dawson county. Subsequently, at different times during the same year, he borrowed $300 more, for which he also gave notes. The land conveyed by the deed referred to was described, not by metes and bounds, but by the numbers of the land-lots, the entire land conveyed consisting of thirty-three land-lots and a designated fractional part of another land-lot, with the exception of a life-estate which had already been conveyed in certain of the lots mentioned and a small tract which had been set apart for use as a church. Palmour failed to pay the notes when they fell due, and in 1900 Smith obtained two judgments against him, one for $2,000 and the other for $300. Each of these judgments contained provision for a special lien upon the land conveyed by the deed executed to secure the notes, and described the land by the

number of the land-lots, in the same manner in which it was de-scribed in the deed.　　Upon the $2,000 judgment an execution issued, directing the sheriff to sell the land, and the description contained in the execution followed that in the deed and the judg-ment.　　In due time and form the sheriff advertised the property for sale, but announced in the advertisement that certain of the lots, which were designated, would be " sold together in one parcel, the same being known as the mineral lands, on which there are supposed to be valuable minerals;" that certain other designated lots would be sold together in one parcel, "the same being known as the farm and farming lands of said defendant;" and that " lot No. 494 as above described [would] be sold separately, it be-ing apart from the other lots."　　On the first Tuesday in Decem-ber, 1900, the property was sold by the sheriff in two parcels, one comprising what was known as the mineral lands, which brought $750, and the other the farm, which brought $4,525.　　The pres-ent action arose upon an equitable petition filed by Palmour against Roper, the sheriff, Black, the purchaser at the sheriff's sale, and Smith, to set aside the sale by the sheriff.　By amendment McKee and McClure were also made parties defendant, it being alleged that Black bought as trustee for himself and them; and in a sup-plemental petition an injunction was prayed against Ashley, Van Vleck, and the Georgia Dredging Company, to restrain them from entering upon the land and committing certain alleged threatened injury thereto.　　A temporary restraining order was granted, and a temporary receiver appointed, in accordance with the prayers of the supplemental petition.　　The original petition alleged that the " said tracts of land, levied on and described as aforesaid, are en-tirely separate and distinct the one from the other, and were con-veyed to [Smith] separately, and not as component parts of a single tract;" that the property " was so conveyed by him with the view to an ultimate sale thereof in such manner as would assure to the said Smith the payment of his money, and at the same time pro-tect petitioner against the consequence of an attempt to sell said property in bulk and under a single bid;" that the value of the land sold was $25,000, and the price paid therefor, $5,275, was " so grossly inadequate as to shock the moral sense;" that there were at the sale numbers of persons who were able and willing to buy said tracts of land, if sold separately, at prices which would

have more than paid the debt and still left a large proportion of the land, but there were none who were either able or willing to purchase the property when sold in bulk and pay a fair price therefor, all of which was known to the sheriff and the purchaser at the time of sale; and that many persons present at the sale were prevented from bidding, because of legal doubts as to the validity of a sale in bulk when a sale of one fourth of the property in separate parcels would have realized a sum sufficient to pay all demands against the defendant in execution.     Roper, Black, and Smith filed separate answers, and McKee and McClure answered jointly.  The case was submitted to a jury, who found for the defendants; and the plaintiff's motion for a new trial being overruled, he excepted.

1. One of the main contentions of the plaintiff in error is, that the deed from Palmour to Smith conveyed the land in separate and distinct parcels, each parcel constituting a land-lot; that the judgment attached against the land in separate parcels; that the execution directed the sheriff to sell it in separate parcels; and that, although the lots " happened to lie contiguous to each other," the sheriff had no power to sell them otherwise than separately. Error is assigned, in the motion for a new trial, upon the charge of the court submitting to the jury as a question of fact whether the land constituted several parcels or was an entire tract, and instructing them that in the former event the sheriff would be bound to sell the parcels separately, while in the latter he would " have a right to levy upon it all, unless by such levy it would be an excessive levy," or that he might, in his discretion, " divide the property himself and sell it in parcels, if he could do so without injuring the value of the property." It is contended that the court should have instructed the jury as matter of law that the property constituted separate and distinct parcels, and that the sheriff was bound to sell it as such. It will have been observed that the judgments and the execution merely followed the deed in the designation of the property which they covered; and so the question really hinges upon whether the deed from Palmour to Smith was intended to convey the land as separate parcels or as a tract or tracts composed of different designated land-lots.   We fail to see how it can be said, as matter of law, that a deed which conveys to the grantee " lots of land numbers fourteen, fifteen, sixteen,"

. etc., necessarily implies a segregation of the lots named. It is a well-known fact that land-lots are laid off purely for purposes of location and description, and have no reference to divisions of land into what are known as tracts, or parcels, except as the two may arbitrarily chance to coincide. It is by no means infrequent for the grantor in a deed, where the land conveyed consists of a single large tract, to describe it solely by the numerical designation of the land-lots embraced. The advantage of this method of description, in avoiding the inaccuracies and confusion likely to result from an attempt to describe the land by metes and bounds, is easily apparent. It can not, therefore, be said, because a deed describes the property conveyed as land-lots numbers one, two, and three, that those land-lots do or do not constitute separate parcels. In *Baxter* v: *Mattox*, 106 *Ga.* 344, a deed conveyed all the timber on certain "lots or parcels of land," describing them by the number of each and the district where located; and it was held that the period of limitation in such a conveyance should be computed, as to the entire lands embraced in the deed, from the time the grantee enters upon any one of the lots, "there being nothing in the conveyance to indicate an intention by the parties that the instrument should be treated as a separate lease to each lot." So also, in the case of *Conley* v. *Redwine*, 109 *Ga.* 641, it was held that "contiguous parcels of land forming one entire tract may be levied on and sold as one tract, although the same be composed of fractional parts of different land-lots." An attempt was made by counsel for the plaintiff to distinguish the case last cited from the case at bar, the distinction sought to be drawn being, in effect, that in the case cited the party seeking to set aside the sale was not the defendant in execution, and that she could not collaterally attack the proceedings on any ground. In this view the ruling to which we have referred was perhaps obiter, but it coincides in principle with the ruling in *Baxter* v. *Mattox*, supra, and announces, we think, a sound doctrine of law. The learned counsel for the plaintiff rely with confidence upon the ruling of this court in the case of *Reeves* v. *Bolles*, 95 *Ga.* 402, as sustaining their position. They quote from the opinion on page 404, as follows: "The land in its entirety being specifically pledged for the payment of the debt, it must inevitably have been within the contemplation of the parties that if it should become necessary to enforce

payment by resort to legal proceedings, the land would be subject to sale as a whole, just as it was conveyed;" and paraphrase it as applicable to the present case, thus : "The land in severalty being specifically pledged for the payment of the debt, it must inevitably have been within the contemplation of the parties that, if it should become necessary to enforce payment by a resort to legal proceedings, the land would be subject to sale in separate parcels, just as it was conveyed." The serious defect in this line of reasoning is that it starts from a point that has not yet been reached. It assumes as an indisputable fact that the land was "pledged in severalty," when there is nothing in the deed itself to indicate that such was the intention of the parties. Indeed, the language of the case cited fits the case under consideration quite as snugly as does the paraphrase.

2. The main object to be considered in the conduct of judicial sales is to make the property bring the best possible price. The law does not seek to sacrifice property which has been pledged for the payment of debt, but, in the interest of both the debtor and the creditor, desires that it should be sold as nearly as possible at its true value. "It is presumed that where property can be divided and sold in lots, a sale in that manner will realize the best price. Therefore it is considered, as a general rule, that property should be so sold when practicable." 17 Am. & Eng. Enc. L. (2d ed.) 975, 976. This, however, in the nature of things, can only be stated as a general rule, and all general rules are subject to exceptions. The reason of a rule is always of more importance than the mere dogmatic assertion of it, and the law varies the application of its rules to comport with the reasons upon which they are founded. "The command of the law that distinct parcels of land shall be offered for sale separately is founded on the assumption that, by so offering them, the best price will probably be secured and the sale not result in the taking from the defendant of any more property than is necessary to satisfy the writ. . . There is no doubt, however, that a sale en masse may always be sustained by proving that it resulted in the receiving of a higher bid than could have been obtained by a sale in parcels." 2 Freeman on Executions, § 296, p. 1704. It will be observed that the foregoing applies to the sale of "distinct parcels," while in the present case it was a sharply contested issue whether the two tracts sold

by the sheriff were made up of separate parcels or were each an entire tract. In the absence of statutory or constitutional provisions as to the method of conducting a sale of this kind, " whether the sale shall be made en masse or in parcels is a matter which rests in the sound discretion of the court ordering the sale ; " and " the determination of the manner of sale in this respect may also be, and sometimes is, left to the discretion of the officer or person directed or appointed to make the sale, who must in such case sell in the manner which he deems calculated to produce the best price." 17 Am. & Eng. Enc. L. (2d ed.) 976 ; Rorer on Jud. Sales, § 732. " The sufficiency of property pointed out to pay the debt is left to the discretion of the levying officer." *Thompson* v. *Mitchell*, 73 *Ga.* 127 (3). We do not, of course, lose sight of the fact that the case last cited has particular reference to sales made under general executions ; but we can conceive of no reason why the principle which it announces, that a discretion is vested in the levying officer as to the manner of conducting sales, is not equally applicable to sales under executions issued against particular land, especially in the absence of instructions to him in the order directing the sale.

What has been said so far leads us to the following conclusions : The deed from Palmour to Smith did not, as a matter of law, convey the property in separate parcels, though it is susceptible of that construction. The intention of the parties to the instrument was a matter for the jury, and to a jury it was fairly submitted under appropriate instructions. The judgment against the property and the execution issued thereon merely followed the description in the deed, and did not constitute a mandate to the sheriff to sell the land in parcels. Whether or not the land in fact constituted distinct parcels was likewise a question which was properly submitted to the jury. Conceding that it was so divisible, the mode of selling it — whether by parcels or in bulk — was, in the absence of instructions on that subject in the order directing the sale, a matter within the discretion of the sheriff, having in view the object to make the property bring the best possible price. On this branch of the case we find no error in any of the rulings of the trial court.

3. It was contended by the defendants that the property was sold as it was — in two tracts — by the request and direction of a son-in-law of the plaintiff, who was an attorney, and who, it was

claimed, was present at the sale, representing the plaintiff as his agent; and the defendants sought to set up an estoppel against the plaintiff on this ground. The plaintiff, on the other hand, contended that his son-in-law had no authority to represent him in making this request, and that he was not bound by the directions alleged to have been given to the sheriff. The court instructed the jury, in effect, that it was for them to say whether or not the relation of principal and agent existed between the plaintiff and his son-in-law, and, in the event they found there was such a relation, the agent would have the legal power to waive for his principal any right that he might have to have the property sold in parcels. The fact of agency and the question whether a waiver was made were expressly left to the jury to determine. It is sufficient to say that this charge, in the light of other rulings herein made, was eminently correct, fair, and well adjusted to the issues involved, and that the complaint made of it in the motion for a new trial is without merit.

4. It is also urged that the court erred in submitting to the jury the question whether or not the levy was excessive, and charging the law in regard to such levies, the ground of complaint being that the charge tended to confuse the jury by injecting into the case an issue not made by the pleadings. In a note to this ground of the motion the trial judge certifies that in the argument counsel for the plaintiff insisted that the levy was excessive. Be that as it may, we are satisfied that the plaintiff can not complain of the error, if any, in this charge, for under his own showing it gave him the benefit of an issue to which he was not entitled.

5 Complaint is made of the charge as to the effect upon the sale of inadequacy of price, it being contended that the instructions on this subject were confused with those upon an entirely different principle of law, and that the charge as given was an incorrect statement of the law. While it is true that the court, in immediate connection with the instructions given the jury as to inadequacy of price, charged upon the power of courts over their officers making execution sales, the jury were expressly informed, as to the latter, that "that is a separate and distinct rule; "and it is difficult to conceive how any injury could have been done the plaintiff by the manner in which these instructions were given.

The charge as to the effect upon the sale of inadequacy of

price was substantially correct. We quote from it as follows: " Great inadequacy of consideration alone is not sufficient to set aside a sale, though taken with other circumstances it might or would be. I will read you the law on that subject: ' Inadequacy of price is no ground for the rescission of a contract of sale, unless it is so gross as, combined with other circumstances, to amount to fraud.' " It is contended by counsel for the plaintiff that the effect of this charge was to instruct the jury that in order to justify the setting aside of the sale for inadequacy of price, coupled with irregularity, the inadequacy must be gross; that " gross inadequacy may be of itself sufficient to authorize the setting aside of the sale, but *mere* inadequacy, coupled with other cause, such as irregularity, misconduct, or error, will be sufficient." The law on this subject really amounts to nothing more than a rule of evidence. Inadequacy of price may be circumstantial evidence of fraud; and, of course, the more inadequate the price the stronger the circumstance pointing to fraud. The law sets aside a sale, not on account of the inadequacy of the price, per se, but for the fraud which it is supposed to evidence. But human experience has demonstrated that such evidence is by no means trustworthy; that many sales are made at an inadequate price, to which no taint of fraud is attached; and so it is provided that a sale may not be set aside for inadequacy of price alone, but that there must be coupled with it other and corroborating evidence of fraud. The charge to which exception is taken states a correct principle of law; and if more explicit instructions were desired as to what counsel are pleased to term " mere " inadequacy of price, a written request therefor should have been made.

6. In a supplemental brief filed by counsel for the plaintiff, it is urged that, under the Civil Code, § 4856, it was necessary for the sale by the sheriff to Black to be confirmed by the chancellor before a conveyance under it could pass title; and as there had been no confirmation of the sale, the deed from the sheriff was void, and should have been set aside on the trial in the court below. This attack upon the sale was not made in the plaintiff's petition, and there is nothing in the record to indicate that the point thereby raised was ever presented to the trial judge or passed upon by him. Civil Code, § 4856, by its terms, is applicable only to sales under decrees in equity. Aside from the caption of the

judgment, which was as follows:    "Marshall L. Smith vs. John D. Palmour, equitable petition on promissory notes and for special judgment on land, Dawson superior court, 1900," the only thing in the record to indicate that the judgment under which this property was sold was based on an equitable proceeding is that the judgment contains the words, "ordered, adjudged, and decreed." Everything points to the conclusion that the action was an ordinary suit at law, brought to recover on the notes and to establish both a general judgment and a special judgment against the land which had been conveyed by a warranty deed to secure the payment of the notes.    But even if it be conceded that Civil Code, § 4856, is applicable to a case like the present, we have no hesitancy in holding that where the sale by the sheriff is attacked by an equitable petition, and that cause is heard by a jury, a verdict rendered finding for the validity of the sale, that verdict approved by the trial judge and judgment rendered thereon, this judicial action is a sufficient confirmation of the sale to meet the requirements of the code section cited.

7. The only remaining question is whether the verdict was sustained by the evidence.    As to many of the issues involved the evidence was in direct conflict, and the jury would have been amply authorized to find either way.    The testimony as to the value of the land sold covered a wide range, but a finding that it brought approximately what might have been anticipated from a forced sale, and little, if any, below its real value, was not unwarranted.    There was also plenty of evidence that a sale of the land by lots would not have brought as much as a sale in bulk; that the farming lands had always been considered as one tract, as had also the mineral lands; that many of the land-lots composing the different tracts were fractional lots, some of which consisted of only three acres; that there was no attempt to chill the bidding at the sale, but that on the other hand several others besides the defendants participated therein.    The plaintiff admitted that his son-in-law represented him at the sale, with authority to request the sheriff to expose the mineral lands for sale first, and the farming lands afterwards, but denied that he had any authority to direct or authorize the sheriff to sell the tracts in bulk. There was no evidence, however, that any one was put on notice of the limited authority of the agent; while it was in evidence that he

had previously represented the plaintiff as his attorney in litigation concerning this same land under the same process and to an extent with the same object in view. The sheriff and others testified positively that the sale was made in accordance with explicit instructions given by the plaintiff's agent. Taken all together, the evidence fully warranted the verdict, and we find no error in the ruling of the court refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*