2131.   HILTON *v.* SYLVANIA & GIRARD RAILROAD CO.

1. The owner and holder of a certificate of stock has the right to have the stock transferred into his name on the books of the corporation, and the illegal refusal of the president of the corporation to permit the transfer makes the corporation liable for any damages resulting from the refusal.

2. Where the material issues in a case depend upon the consideration of documentary evidence, the court should not charge the jury that they "should receive the evidence from the witnesses on the witness stand." In such cases an instruction of this restrictive character tends to mislead and confuse.

3. A petition to recover damages from a corporation, for the refusal of the president of the corporation to allow a proper transfer of stock upon the books of the corporation, must contain allegations of facts showing damage from the refusal.

DECIDED JULY 5, 1910.

Action for damages; from city court of Sylvania—Judge Boykin. August 18, 1909.

Hilton brought suit for damages against the Sylvania & Girard Railroad Company, alleging, in substance, that on July 5, 1906, he was the owner of five shares of capital stock of the defendant company, and was the holder of the stock certificate representing these shares; that this certificate had been originally issued to one Enneis, from whom he bought the stock, and who delivered the certificate to him; that on said date the plaintiff had an offer from a third person for the purchase of four of these shares; that the defendant had no by-law providing the mode in which transfers of stock should be made, but on the face of each of the stock certificates was printed the following: "Transferable only on the books of the corporation by the holder thereof, in person or by attorney, upon the surrender of this certificate properly endorsed;" that the plaintiff, in order to make delivery of the four shares, called upon the president of the defendant company to transfer this stock to his name, and stood ready to surrender the certificate properly endorsed, and made a formal demand for the transfer on the books of the corporation; that the defendant, through its president, without cause, refused to transfer the stock on surrender of the certificate, or to issue a new certificate, in lieu of the old one, and therefore the plaintiff was unable to deliver the shares he had sold; that he had previously accepted the offer made to purchase the stock, but that the proposed purchaser declined to take the stock, except upon the

condition that the transfer be made, and, the plaintiff not being able to have the transfer made by the defendant, the purchaser withdrew his offer; that the price offered for the four shares was $2,500, or $625 per share. By an amendment to his petition, to meet a special demurrer, the plaintiff alleged, that this offer was made to him by Demere & Hammond, brokers, of Savannah, Ga. He alleged that after the withdrawal of the offer, he sold the five shares, making diligent effort to sell at the best price obtainable, and obtained for them $1,000 less than he had been offered for the four shares. He sued for the special loss of $1,000 on the four shares, and for $625 as the value of the one share, which he alleged was worth that amount at the time he received the offer for the four shares, and when his demand for transfer was refused by the company. He based his right to recover the value of the one share on the ground that the refusal of the defendant to transfer the five shares amounted to a conversion of the one share. On demurrer the court struck from the petition all allegations of damage by reason of the conversion of the one share of stock, and restricted the issue to the actual loss of profit in the sale,—alleged to be $1,000; to which ruling the plaintiff excepted pendente lite. The defendant contended that the offer of purchase of the four shares was not made bona fide, but was made through the procurement of the plaintiff, and was fraudulent. The jury returned a verdict for $100 in favor of the plaintiff, and he moved for a new trial; the motion was overruled, and he sued out this writ of error.

It appeared, from the evidence on the trial, that in the year 1906 Hilton, with certain parties identified with him, together with one Morel and certain parties identified with Morel, formed a corporation known as the Sylvania & Girard Railroad Company, the defendant in this suit; that there were two so-called factions in this company, known respectively as the Hilton and Morel factions, and that the capital stock of the company was $10,000, evenly divided between the two factions, neither having control. By agreement at the meeting for organization, the Morel faction was given the presidency and control of the directorate of the company, the Morel faction having three of the five directors. Later one of the directors died, and the Hilton faction applied for a writ of mandamus to compel a meeting of the stockholders, to be held for the purpose of electing a board of directors. This mandamus pro-

ceeding was decided by the Supreme Court in favor of the applicants. See *Sylvania & Girard R. Co.* v. *Hoge,* 129 *Ga.* 734 (59 S. E. 806). At the next meeting of the stockholders for the election of directors the five shares of stock now in controversy were the cause of considerable dissension. Enneis, the original owner of the five shares, was one of the Morel faction. Becoming offended with Morel, he sold his five shares to Hilton; which gave the Hilton faction control of the corporation. Morel and his friends refused to recognize the sale from Enneis to Hilton as being valid, and at the next regular meeting of the stockholders, of which Morel was chairman, Hilton was not allowed to vote these five shares; their action being based on the contention that in the incorporation of the company it had been agreed between the two factions that Morel and his friends were to have indefinite control in the management of the company. Thereupon the two factions held separate meetings, electing separate officers and directors. Hilton and his friends brought an application for mandamus to compel Morel and his friends to turn over the physical property of the corporation to them, and the Supreme Court decided in favor of the applicants, on the ground that the agreement between the two factions of the shareholders, to the effect that one of said factions, owning one-half of the corporation stock, should have the right indefinitely to name a majority of the directors of the company, and thus manage and control its affairs, was against public policy, and therefore void. See *Morel* v. *Hoge,* 130 *Ga.* 625 (61 S. E. 487, 16 L. R. A. (N. S.) 1136).

The statement of the evidence up to this point, although not strictly relevant, illustrates to some extent the issues in the present case. Hilton proved substantially all the allegations of his petition. He proved positively and conclusively that he had been offered $2,500 for the four shares of stock, by the brokerage firm of Demere & Hammond, of Savannah; that this firm, in making the offer for the stock, represented G. Noble Jones; that the $2,500 was actually offered by Jones through the firm for this stock, and that this money was in a bank at Savannah, subject to the order of Hilton, on presentation of the certificate of the stock duly transferred on the books of the corporation; that the only reason why the sale was not consummated was the failure of the defendant, through its president Morel, to recognize as valid his purchase of

the five shares of stock from Enneis, and to transfer the same to his name on the books of the corporation, and that the purchaser refused to accept the stock certificate unless that transfer was made; that he had made, in person and by letter, repeated demands on Morel, as president of the company, to make this transfer, in order that he might consummate the sale, notifying Morel that he had had an offer of sale for the stock and could not consummate the sale unless the transfer was made, and that his refusal to transfer would subject him to great damage and loss; that after the refusal of the company to make the transfer, and the refusal of the proposed purchaser to accept the stock without the transfer, he used all due diligence to sell the same, even offering it to Morel himself, and that the best price he could get for it was $1,500. The defense relied upon, that the sale to Jones was not a bona fide sale, but was fraudulent, was not sustained by any evidence, direct or circumstantial.

*T. J. Evans, A. B. Lovett,* for plaintiff.

*J. W. Overstreet, E. K. Overstreet,* for defendant.

HILL, C. J. (After stating the foregoing facts.)

1. In our opinion, under the evidence and the law applicable thereto, the plaintiff was entitled to a verdict for $1,000. He was the owner of the five shares of stock bought by him from Enneis. His title to this stock had been settled by the adjudication of the Supreme Court in the case of *Morel* v. *Hoge,* supra. He had a bona fide offer of $2,500 for four shares of this stock. This offer was clearly shown, and it failed of consummation solely because of the refusal of the president of the company to make the proper transfer upon the books of the corporation. The effort made by the defendant to attack the bona fides of this sale was not successful. While it is true that fraud may be shown by slight circumstances, and by inferences fairly and reasonably deducible from the facts, yet the jury can not arbitrarily assume its existence, but there must be some proof, direct or circumstantial, from which such an hypothesis can be drawn. In this case the evidence in behalf of the plaintiff is clear and undisputed that the offer of $2,500 was made to him by the brokerage firm of Demere & Hammond, of Savannah, representing G. Noble Jones, and that it was made in good faith; that the plaintiff did not know this firm had had no communication with them on the subject before they made the

offer in a letter. There is no evidence whatever that he had ever had any personal communication with Jones.

The court charged the jury the law of actual and constructive fraud, and this portion of the charge was assigned as error. The jury must have been misled by these instructions. There appears no evidence whatever upon which to base such instructions, and they should not have been given. The verdict of $100 in favor of the plaintiff seems to have been purely arbitrary on the part of the jury. The suit was for an actual loss of profits on the sale of four shares of stock, amounting to $1,000, and the proof established indisputably that this was the loss. The proof clearly established that the plaintiff could have procured $2,500 for the four shares of the stock, but for the refusal of the defendant company, through its president, to make the transfer on the books of the company; and the evidence for the plaintiff is also uncontradicted that after this sale had failed by reason of the company's conduct, he used all due diligence to sell the stock, and could only get for the four shares $1,500. The jury could not have found, under the evidence, any other sum than $1,000; for if they belived that the sale was fraudulent, as contended by the defendant, their verdict should have been against the plaintiff entirely. There was no evidence upon which to base the verdict for $100.

But, of course, the plaintiff can not recover damages against the company unless the refusal of the president to transfer the stock on the books of the corporation was illegal. Stock in a railroad corporation in this State is personal property (Civil Code of 1895, § 2165) ; and it has been universally held that the illegal refusal of a corporation to transfer stock to the name of the owner constitutes a conversion of the stock by the corporation so refusing, the measure of damages being the value of the stock at the time of demand and refusal. *Bank of Culloden* v. *Bank of Forsyth,* 120 *Ga.* 576 (48 S. E. 226, 102 Am. St. R. 115) ; 26 Am. & Eng. Enc. Law (2d ed.), 887 ; 2 Cook on Corporations, § 392. That a corporation is liable for the illegal refusal of the president to allow the proper transfer of stock to the name of the true owner can not be doubted. Civil Code of 1895, § 1861. "Subject to the right of the corporation to assert a lien on shares, . . both the assignor and the assignee have a legal right to have a transfer made on the books of the corporation and a new certificate issued to the assignee."

Sec 4 Thompson on Corporations, §§ 4628, 4650. And in some jurisdictions this transfer may be compelled by mandamus. 2 Cook on Corporations, §§ 389, 392; *Thornton* v. *Martin,* 116 *Ga.* 115 (42 S. E. 348). To meet these well-settled principles of law it is contended by the defendant that under the decision of the Supreme Court in the case of *Sylvania & Girard R. Co.* v. *Hoge,* supra, there was no duty resting upon the defendant corporation to transfer any stock upon its books, as in that case Justice Evans held that the corporation had neither charter nor by-laws which required a transfer on the books. The learned Justice further held that where neither the charter, statute, nor corporate by-laws require a book transfer, the assignee of the certificate of stock may vote thereon, although, on the books of the company, the stock stands in the name of the assignor. In that case, however, it was not shown that there was a mode of transfer provided by the corporation; it was not shown that the stock certificate provided on its face that the stock was transferable only on the books of the corporation. These stock certificates together with the charter and the statute under which the corporation is organized constitute the contract of association between the various stockholders, and between the stockholders and the corporation. 26 Am. & Eng. Enc. Law (2d ed.), 831. Where there is a by-law on the subject, the transfer should be made in the manner prescribed by the by-law. Civil Code, § 2165. But if there is no by-law on the subject and nothing in the charter on the subject (as in the present case), should not the transfer be made according to the provisions written across the stock certificate? And where the certificate of stock —the evidence of the purchaser's title and ownership—gives notice that, to secure good title, he must have the transfer recognized by the corporation, by registry on its books, is not the purchaser entitled to have such transfer duly made; and does not an arbitrary refusal so to transfer the stock, by the officer of the company, render the corporation itself liable in damages? In other words, does not the provision written across the face of the stock certificate have the force and effect of a by-law of the corporation; and does it not follow, if this be true, that the corporation is under a legal duty to transfer the stock upon demand? "In the case of a sale of stock the purchaser's right to have the stock transferred from the name of the seller into his own and to sur-

render the old certificate, if he desires, and have a new one issued to him in his own name, is unquestioned and unquestionable." 26 Am. & Eng. Enc. Law (2d ed.), 877. We therefore conclude, under these authorities, that although the charter or by-laws contained no provisions on the subject of transfers of stock, yet, in view of the statement on the face of the certificate, that the stock was "transferable only on the books of the corporation by the holder thereof, in person or by attorney, upon the surrender of this certificate properly endorsed," the plaintiff in this case had the right to have his stock transferred on the books of the corporation to his name, and the corporation was under a legal duty to make such transfer, and the failure of its proper officer to do so rendered it liable for any resulting damage.

2. Another ground of the motion for a new trial is that the court erred in charging the jury that they should receive the evidence "from the witnesses upon the witness stand." It was contended that this charge was prejudicial, as almost the entire case for the plaintiff was made by documentary evidence, such as letters, telegrams, etc. While we do not think a jury of ordinary intelligence would probably have considered these instructions as depriving them of the right to take into consideration the documentary evidence, yet it has been repeatedly ruled that such instruction, where there was material documentary evidence, was reversible error. *Stiles* v. *Shedden*, 2 *Ga. App.* 317 (58 S. E. 515); *Myers* v. *State*, 97 *Ga.* 79 (25 S. E. 252). The other excerpts from the charge excepted to, when considered in connection with the whole charge, are without material error. Of course, this does not refer to the charge objected to on the subject of actual and constructive fraud, which, as above stated, was erroneous because not authorized by the evidence. Indeed, we might put the reversal in this case solely on the general grounds, without reference to any of the special assignments of error.

3. The court did not err in sustaining the demurrer to that part of the petition seeking to recover $625 for an alleged conversion of one share of stock. While the plaintiff was entitled to have that share transferred on the books of the corporation, there is no averment of any damage resulting from the refusal to do so. There is no allegation that the plaintiff had been offered $625 for that share, or that it could have been sold for this sum but for

defendant's refusal to transfer it on the books to the name of the plaintiff or of any alleged purchaser. The refusal to transfer on demand was illegal, but no damage is alleged to have been caused thereby.                                        *Judgment reversed.*