*J. J. Bowden Sr.,* contra.

---

## 15722.  SOUTHERN EXCHANGE BANK *v.* LANGSTON.

Where capital stock pledged as collateral for the payment of a promissory note was sold by the pledgee after default as to payment, and the amount realized from the sale was not sufficient to pay the note, and in an action in a city court the pledgee sought to recover the balance, damages because of a violation of the contract of pledge in the sale of the pledged property could be set up by plea of recoupment.

The charge of the court as to the law applicable to the case was subject to exceptions taken in the plaintiff's motion for a new trial.

DECIDED FEBRUARY 12, 1925.

Complaint; from city court of Dublin—Judge Sturgis. May 29, 1924.

*M. H. Blackshear, C. C. Crockett,* for plaintiff.

*J. S. Adams, R. Earl Camp,* for defendant.

JENKINS, P. J.  1.  "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." It "may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to defendant;" and where recoupment may be pleaded, "if the damages of the defendant shall exceed, in amount, those of the plaintiff, the defendant shall in such cases recover of the plaintiff the amount of such excess." Civil Code (1910), §§ 4350, 4353. A city court has jurisdiction to entertain a proper plea of recoupment and to give judgment for the excess. Even though the counterclaim involve a tort and alleged conversion, "the tort could be waived and the claim set up as a defense, as upon an implied con-

tract" in the same transaction. *Park* v. *Carmichael,* 20 *Ga. App.* 36 (1 *a,* 4, 5) (92 S. E. 397); *Norton* v. *Graham,* 130 *Ga.* 391, 393 (60 S. E. 1049). There was no merit in the contention that the defendant could not recoup damages (such as would be proper) arising from the alleged violation of the express or implied terms of the pledge in question.

(*a*) Where there has been an actual conversion of the pledged property, the defendant pledgor, in a suit against him by the pledgee for the balance of the debt, is entitled to recoup the difference between the amount for which the pledgee sold the property in violation of the express or implied contract of pledge and the actual value of the property on the date of sale. *Bennett* v. *Tucker,* 32 *Ga. App.* 288 (123 S. E. 165, 167), and cases cited; *Campbell* v. *Redwine,* 22 *Ga. App.* 455 (3) (96 S. E. 347), and cases cited.

2. The statutory obligations as to public sale and notice to the pledgor may be waived by special contract (Civil Code of 1910, § 3530); and "where the pledgee is authorized, on or after the nonpayment of the note at maturity, to sell" corporate stock held as collateral "at public or private sale, without advertisement or giving any notice to the maker and pledgor, the sale is not invalid when made without demand and without notice of the time or place of sale." The request of the pledgor to postpone the sale until further notice, with a promise "to pay whenever the pledgee wished," is irrelevant. *Thornton* v. *Martin,* 116 *Ga.* 115 (3, 4) (42 S. E. 348).

3. The pledgee, in making such a private sale of the property pledged to him as collateral security, must act in good faith, and with a reasonable degree of skill and diligence in securing a fair price and conserving the pledgor's interests, so far as consistent with his own protection. If the pledgee sells corporate stock fairly and rightfully in all respects, he is not responsible for its bringing less than its estimated value, and he must account only for the amount actually received, where he has exercised the ordinary and reasonable care and diligence required by law as a part of his contractual obligations to the pledgor. Civil Code (1910), § 3535; 21 R. C. L. 692; 21 Cyc. 877, 878, 880.

4. Where property is easily and readily salable on the open market at a definite, well-known, or ascertainable market value,

the mere failure of the pledgee in a private sale to sell at such value might of itself amount not only to a failure of the ordinary and reasonable skill and diligence which is required of him by law, but also, where the facts are plain, amount to such a lack of good faith as would constitute fraud and a conversion of the property. But where the pledged property consists merely of stock in a private corporation, not readily salable on the open market, and without a real and definite market value fixed by public demand and actual sales, but having only a theoretical market value, based on estimates of the book value of the stock and on two or three scattered and isolated sales made by stockholders before and after the day of sale by the pledgee, the mere failure of the pledgee to obtain for it such theoretical and opinionative market value will not of itself establish fraud and conversion. *Palmour* v. *Roper,* 119 *Ga.* 10 (5), 19 (45 S. E. 790) ; 19 R. C. L. 614 (§ 431).

5. In the instant case the unstricken paragraphs of the defendant's original plea of recoupment in effect admitted the execution of the note sued on, and merely set up that it was "incumbent upon the plaintiff to act in good faith to the extent of obtaining the market value" of the stock sold as collateral; that the plaintiff is indebted to the defendant "on account of its failure to obtain the market value of the same at the time of the sale as represented in the difference of $60 and $150 per share;" that such difference in the 47 shares amounted to $4250; and that, "had the plaintiff obtained on the sale of said stock its market value as it was legally and morally bound to do, said market value . . would have exceeded plaintiff's present demand in the sum of $3,459.36;" and the defendant prayed to recoup this difference. By an amendment to the plea it was alleged that "the plaintiff converted said stock by selling the same at less than the market value, having taken over and converted to their own use at a valuation of $60 per share, when in fact said stock at the time of taking over was worth $150 per share." The plaintiff demurred generally to the plea as setting up "no legal defense," and also as seeking to set up damages in tort in defense to an action ex contractu, and excepts to the overruling of this demurrer. The court in effect charged the jury that the sole issue was whether the plaintiff was "indebted to the defendant the difference between the fair market value of said stock and what the stock was actually sold for by the plaintiff;" that it was

"the duty of the plaintiff to sell the stock fairly and at a fair market price, and if the plaintiff knowingly sold the stock at a price less than the market price, then the defendant would be entitled to recover from the plaintiff the difference between the fair market price and what the stock actually brought;" and in effect directed a verdict for the defendant if the jury should find "that the bank sold this stock for less than the market price," if "the fair market price was greater than the amount of the debt due the plaintiff by the defendant." The jury returned a verdict for the defendant for $1,408.12 principal and $188.87 interest, total $1,596.99. To the above-quoted and similar instructions the plaintiff excepts in its motion for new trial.

(*a*)  The court might have stricken the original plea on the general demurrer thereto, since there was no allegation of fraud and conversion; but there was no error in refusing to strike the plea as amended, setting up an actual conversion by the plaintiff to its own use of the stock in question. On that defense, however, a verdict for the plaintiff was demanded by the evidence. If on a retrial the plea should remain unamended, without alleging any want of ordinary care on the part of the plaintiff in failing to obtain the alleged value of the stock on the date of sale, and evidence as to an actual conversion should again remain lacking, the defendant's right of recoupment would fail.

(*b*)  But in the event of an amendment of the plea as just indicated, the proper measure of damages, where there has been no conversion, but merely a failure to obtain at a private sale a fair and proper price for corporate stock held as collateral, by reason of a failure to exercise ordinary and reasonable skill and diligence, is not the difference between the price obtained and the theoretical intrinsic or opinionative market value, based only on calculations and opinion as to the book value of the assets and liabilities and on two or three isolated sales before and after the date of the transaction, but is only the difference between the amount obtained and such value as the jury may find could and should have been obtained by the pledgee had it exercised ordinary and reasonable skill and diligence in making the sale. This may or may not be the theoretical market value. The plea as now amended, in so far as it seeks to allege a conversion merely by failing to obtain the alleged market value of the stock, failed to

state a legal defense; and the charge of the court upon that line, as indicated above, was erroneous. While there was evidence on both sides as to what the stock should have brought, and as to the care and diligence exercised in making the private sale, there was no evidence of actual conversion of the stock to the pledgee's own use.

6. The charge with reference to a recovery of the difference between the amount due the defendant and "the amount of the debt due the plaintiff by the defendant" was likely to have been confusing to the jury, in failing to refer to the plaintiff's right to recover attorney's fees on the note sued on, the defendant having in effect admitted general liability for principal and interest and receipt of the notice for attorney's fees, and relying solely on his claim of recoupment.

*Judgment reversed. Stephens and Bell, JJ., concur.*